THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CEVEL ARNOLD, JR., Defendant-Appellant.

(No. 55745;

First District (2nd Division)—June 12, 1973.

Joan M. Pucillo, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, (Elmer C. Kissane, Ronald Lake, and James Staruck, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HAYES delivered the opinion of the court:

On 14 July 1970, Cevel Arnold, defendant-appellant (hereafter defendant), was indicted by the Cook County grand jury, under general number 70-2018, for the murder of Howard Smith. Defendant pleaded not guilty. On 12 August 1970, after a jury trial, defendant was found guilty of the lesser included offense of involuntary manslaughter. He was sentenced to a term of not less than 6 nor more than 10 years. This is defendant's appeal from that conviction.

The evidence disclosed that, shortly before midnight on 8 April 1970, one Howard Smith was shot and killed in a tavern known as Smitty's Lounge, located at 3713 West Roosevelt Road in Chicago. Defendant testified that he arrived at Smitty's Lounge some time between 9:00 and 9:30 P.M. on the night of the incident. Shortly after he arrived, he was at the bar speaking to one Ricky Brown when he was approached by a

man known to him only as "James." He had seen "James" around the lounge before, but he did not know his last name nor where he lived. A transaction ensued between defendant and "James" wherein defendant loaned "James" fifteen dollars and received a handgun as security. Defendant thereupon handed the gun to Ricky Brown who, in turn, put it under the bar. Whether Ricky Brown witnessed the transaction between defendant and "James" is not clear from the record.

While the details vary, the evidence indicates that, at a later time that same night, defendant and the victim and one John Earl became involved in an argument at the rear of the lounge. The nature of the argument is not apparent from the record, but it led the three men to go out the rear door of the lounge. John Smith (the owner of the lounge) and Willie Brown (an employee) who were then working just outside the rear door, both testified to the fact that the argument between defendant and the victim became physical, requiring intervention by John Smith. Defendant then went back inside the lounge, retrieved the gun that he had given to Ricky Brown earlier that evening, and returned to the outside of the rear door. Shortly thereafter the victim reentered the lounge, closing the rear door behind him. Defendant pushed the door open, fired one shot, and the victim fell to the floor with a bullet wound in his back, from which he subsequently died.

Defendant testified that he got the gun in order to scare the victim from "going to get his gun," since he had been "known to pull a gun before"; that he had called for the victim to stop; that John Smith then "grabbed the gun from my hand and the gun went off." John Smith and Willie Brown agreed that they had indeed grabbed the gun from defendant's hand and taken it away from him, but that they had done so only after he had fired the weapon. No one saw a gun in the victim's possession.

On this appeal, defendant relies on two allegedly reversible errors. Both occurred during the prosecutor's final argument to the jury.

Defendant's initial contention is that it was error for the prosecutor to comment upon the failure of the defense to call "James" as a defense witness. The prosecutor's comment was as follows:

> "I say the conflicts the defendant's testimony raises are incredible in the light of the clear and convincing evidence we have presented in our case. Where is James? Why is the man who gave him the gun not here? Why isn't he here? James, without a last name. Where does James live * * *?"

There was no objection by the defense to this comment.

Defendant relies on *People v. Munday* (1917), 280 Ill. 32, 117 N.E.

286, in support of his contention that this comment constitutes reversible error. In *Munday*, the prosecutor commented upon the failure of the defense to call certain witnesses who had been jointly indicted with the appellant. Beyond this, however, the prosecutor stated to the jury that it was the appellant's *duty* under the law to produce these witnesses since they could have substantiated the theory of the defense. The Illinois Supreme Court held that the prosecutor's argument was substantially prejudicial for two reasons. The court stated the general rule as follows:

> "While there is some apparent conflict in the authorities, the general rule is that the omission or failure of a defendant in a criminal prosecution to call as witnesses those who could testify of their own knowledge to material facts raises no presumption of law that if called they would have testified unfavorably to him, but the jury may consider his failure to produce or to endeavor to produce such witnesses as a circumstance in determining his guilt, provided it is manifest that it is within the power of the accused to produce such witnesses and that such witnesses are not accessible to the prosecution." [Citations.]

Since in *Munday* the missing witnesses were under indictment, and therefore either in custody or at liberty on bail, it did not appear to the court that they were any less accessible to the State than they were to the defendant-appellant. The court went on to say that the prosecutor went "further than merely offending against the general rule" by asserting that it was the duty of the defendant to call certain witnesses, while, in fact, the law imposes no such duty upon him.

In the present case, the assistant State's Attorney made no suggestion that defendant had any *duty* to produce the man who gave him the gun. Nor does it appear that the man named "James" was accessible to or could even be identified by the State.

A fact situation closer to the present one is seen in the case of *People v. Carr* (1969), 114 Ill.App.2d 370, 252 N.E.2d 912. In *Carr*, the prosecutor, in his remarks to the jury, argued that if the defendant-appellant's story were true, he would have produced certain witnesses to corroborate his testimony. The court, relying on *People v. Munday* (1917), 280 Ill. 32, 117 N.E. 286, stated that "the rule is that the State may not in closing argument draw adverse inferences from a defendant's failure to call a particular witness unless it is manifest that the witness is more accessible to the defendant than to the State." The court then inferred that defendant's father, a friend, and the friend's unnamed girl friend were more accessible to defendant than to the State. In the

present case, defendant knew what "James" looked like, since he had seen him before in the lounge. He knew his first name. He knew him well enough to lend him money. It is a fair inference that "James" was more accessible to defendant in this case than to the State.

In another similar case, *People v. Poole* (1970), 121 Ill.App.2d 233, 257 N.E.2d 583, the court held that there was no error committed by the prosecutor in commenting on the defendant's failure to produce certain witnesses to corroborate his defense. In affirming the lower court decision, the court relied on *People v. Williams* (1968), 40 Ill.2d. 522, 529, 240 N.E.2d 645, 649, 650, where the Supreme Court stated:

"* * * It is our conclusion that though failure to call a witness or produce evidence may not be relied on as substantial proof of the charge, nonetheless, if other evidence tends to prove the guilt of a defendant and he fails to bring in evidence within his control in explanation or refutation, his omission to do so is a circumstance entitled to some weight in the minds of the jury, and, as such, is a legitimate subject of comment by the prosecution. * * * In other words, the rule may be stated that, in the absence of express prohibition, every fact which, in no illegal manner, comes to the knowledge of the jury during the progress of a trial, and which may reasonably influence their judgment is a proper subject of comment in argument."

■■ To consider the assistant State's Attorney's comment in the present case in its most prejudicial light, the comment infers either that there was no "James" or that, if there was a "James", he would not have corroborated defendant's testimony about the pawning of the gun. Either inference in turn would lead to the conclusion that defendant brought the gun with him into the tavern, thus tending to supply the necessary intent or *mens rea* for the instant charge of murder. Since, however, defendant was found guilty of the lesser included offense of involuntary manslaughter, it is impossible that defendant's failure to call "James" was relied on as "substantial proof of the charge." And since in this case there is other evidence to support defendant's guilt, there was no error committed under the *Williams* principles.

■■ Further, it should be noted that defendant's attorney failed to object when the comment in question was made. Where there is no objection, errors stemming from the prosecutor's remark to the jury are deemed waived unless they are so prejudicial that the reviewing court must consider whether they affected the outcome of the case. *People v. Hampton* (1969), 44 Ill.2d 41, 253 N.E.2d 385; *People v. Boyce* (1969), 113 Ill.App.2d 266, 252 N.E.2d 71.

Defendant's second contention asserts the prejudicial impropriety of

two other remarks made by the assistant State's Attorney during his final argument to the jury. The first remark is as follows:

"I submit that you will find the defendant guilty of murder. We have proven him guilty beyond a reasonable doubt by all of this evidence. When you return, go back to the jury room, you will receive the verdicts, and if you feel that this defendant did act recklessly, didn't mean to do what he was doing then find him guilty of involuntary manslaughter. If you believe someone else did this, cut him loose, and he will walk out of the room. He will walk back to Roosevelt and Lawndale, and he's going to laugh at everyone of us, *especially ladies and gentlemen of the jury.*" (Emphasis added.)

An objection was made by defense counsel and sustained by the court; however, no added specific instruction to disregard the remark was given to the jury. The assistant State's Attorney went on:

"I submit ladies and gentlemen we have proven our case. The evidence, you have heard. We know what the evidence is. You are the tryers [*sic*] of facts. This is where the buck stops. No one else makes a decision. I submit you return a verdict of guilty of murder. You will have done your duty according to the law and the facts and the evidence in the case."

Again defense counsel objected, but this objection was overruled by the court.

Defendant contends that the court failed to keep the prosecutor's closing argument within proper limits by not specifically instructing the jury to disregard the prosecutor's first remark, and by overruling the objection to his second remark. Defendant asserts that these remarks were highly prejudicial and were designed to arouse the passion of the jury, thus depriving him of a fair trial. He specifically contends that, were it not for these remarks by the prosecutor, he would have been acquitted.

■■ We agree with the trial judge that the first remark was highly improper. It had no connection with any evidence in the case and was clearly inflammatory in nature. However, an objection was made to it and the objection was sustained. No request was made by defense counsel for an immediate, additional specific instruction to disregard the remark. We take judicial notice of the fact that the giving of such an immediate specific instruction tends to bring the improper remark even more sharply to the attention of the jury. For that reason, it is the practice of many trial judges not to add the specific instruction unless requested to do so by counsel who has successfully objected. We approve that practice and the reason for it to the extent of holding that

the trial judge is under no duty to add the specific instruction *sua sponte*. We do not hold, of course, that it would be error to do so. *People v. Black* (1970), 130 Ill.App.2d 996, 266 N.E.2d 458.

In this case we note also that, before retiring, the jury was given, *inter alia*, at the instance of the State, a relevant general instruction (IPI —CRIMINAL 1.03) that closing arguments are not part of the evidence, and that any statement or argument made by the attorneys which was not based on the evidence should be disregarded. See *People v. Pieper* (1951), 410 Ill. 15, 101 N.E.2d 109.

■■ Considering all these facts in the light of the strong nature of the evidence against defendant in respect of the verdict of involuntary manslaughter, we feel that the error committed by the assistant State's Attorney was not substantially prejudicial.

■■ As to the second remark, regarding the jury's duty to find the defendant guilty of murder, we see no error, since the remark was predicated upon "the law and the facts and the evidence in the case." Moreover, any mention of murder in either comment was harmless, since there was obviously no reliance on it by the jury, as shown by their verdict of involuntary manslaughter.

■■ Although not raised by defendant, this court takes notice that the sentence of six to ten years is excessive in light of recent legislation. Section 8—2—4 of the Unified Code of Corrections states in pertinent part:

> "If the offense being prosecuted has not reached the sentencing stage or a final adjudication, then for purposes of sentencing the sentences under this Act apply if they are less than under the prior law upon which the prosecution was commenced." Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1008—2—4 (effective January 1, 1973, par. 1008—6—1).

The offense of involuntary manslaughter is now characterized as a Class 3 felony. (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 9—3. Class 3 felonies have a maximum term of "any term in excess of one year and not exceeding ten years." (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005— 8—1(b) (4).) The minimum term for a Class 3 felony "shall be one year unless the court, having regard to the nature and circumstances of the offense and the history and character of the defendant sets a higher minimum term, which shall not be greater than one third of the maximum term set in that case by the court." (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1005—8—1(c) (4).) Here the minimum term imposed on defendant exceeds one-third the maximum term actually imposed.

Since this cause had not been finally adjudicated as of the effective date of the Unified Code of Corrections, defendant is entitled to the

benefit of its provisions which would lessen his minimum sentence. We affirm the judgment of the lower court, and remand this cause to the circuit court of Cook County for proper resentencing. *People v. Harvey* (1973), 53 Ill.2d 585, 294 N.E.2d 269.

Affirmed and remanded with directions.

STAMOS, P. J., and LEIGHTON, J., concur.