THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HARLEY RAY CRANE *et al.*, Defendants-Appellants.

(No. 73-230; )

Fifth District—January 9, 1976.

*Rehearing denied February 5, 1976.*

Paul Bradley and Margaret Maxwell, both of State Appellate Defender's Office, of Chicago, for appellants.

Dale A. Allison, Jr., State's Attorney, of Mt. Carmel (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendants-appellants, Harley Ray Crane and William Johnson Hutton, were convicted of several offenses after a joint jury trial in Wabash County. Defendant Crane was convicted of two counts of burglary, two counts of theft of property in excess of $150 (one being receipt of property knowing it to have been stolen) and one count of theft of property less than $150. He was sentenced to concurrent sentences of from six to twenty years for each burglary, three to ten years for each theft of property in excess of $150, and one year for theft of property less than $150. Defendant Hutton was convicted of one count of burglary, two counts of theft of property in excess of $150 (one being receipt of property knowing it to have been stolen) and one count of theft of property less than $150 and was acquitted of one count of burglary. He received sentences identical to those imposed upon Crane for each offense. On appeal, both defendants urge that they were not proven guilty beyond a reasonable doubt of any of the charges, that they were prejudiced by errors of the trial court, and that the sentences are improper.

Because of our belief that prejudicial error occurred which necessitates a new trial in this case, we need only review the facts briefly. The offenses arose from breakins of three different buildings in Mt. Carmel on the same night. The State's case was based primarily on the testimony of Ricky Pollard, an accomplice, who implicated the two defendants in all three offenses. The first incident was the burglary of and theft from the White Distributing Company. Mrs. Margaret White testified that the company was her "business," that a breakin was discovered, and that a check of the inventory revealed that six cases of Fall City beer had been stolen from a truck inside the building. Pollard testified that he had met the defendants near the building, that the defendants were carrying six cases of Fall City beer, and that one or both had admitted that the beer came from White Distributing Company and that they "told us they broke into it."

Clyde Rosignal, owner of Rosignal's Marathon Service Station, testified that he discovered that his station had been entered and that money, checks and sales receipt slips contained in a blue bank money pouch had been taken from a safe. Pollard testified that he and a juvenile had committed the burglary and later had given Crane and Hutton $30 each. Wabash County Sheriff Bennie Wood testified that he searched Crane's car pursuant to a search warrant and seized a blue bank money pouch containing checks and sales receipts from the service station. Crane's wife testified for the defense that she had seen the juvenile accomplice place objects in the car and that Crane had no knowledge of their presence.

Edward Smith, manager and accountant for the Moose Lodge in Mt. Carmel, testified that he discovered that the lodge had been broken into and that money had been stolen from cash boxes at the bar. Pollard testified that he, Crane, Hutton and the juvenile had committed the offense and had shared in the proceeds.

During cross-examination, Pollard admitted that he had pleaded guilty to an unspecified offense or offenses arising from the incidents and had agreed to testify in exchange for probation. At the time of trial, Pollard had not been sentenced, but admitted that the promise of probation was the sole inducement for his testimony. After brief redirect examination, the court asked Pollard if he understood the penalties for perjury and, regardless of the reasons for his testimony, whether his answers were true and correct. Pollard answered "yes" to these questions.

Defendants first contend that they were not proved guilty beyond a reasonable doubt of any of the offenses charged. This argument rests primarily upon the alleged "incredibility" of Pollard, an accomplice who provided the sole evidence of defendants' acts. While accomplice testi-

mony must be viewed with suspicion, it is sufficient to convict even if uncorroborated. (*People v. Baker*, 16 Ill.2d 364, 158 N.E.2d 1 (1959).) The jury had before it conflicting evidence and was given an instruction on accomplice testimony. It is the jury's duty to judge the credibility of the witnesses and weigh their testimony and the jury's verdict will not be disturbed unless it is so palpably contrary to the evidence or the evidence in support of it so unsatisfactory as to justify a reasonable doubt of defendants' guilt. (*People v. Stringer*, 52 Ill.2d 564, 289 N.E.2d 631 (1972).) Were it not for certain actions of the trial court, discussed below, which tended to remove from the jury the heart of its deliberations, we would hold the evidence of guilt sufficient to support the convictions.

■■ Defendants further contend that the State failed to prove the *corpus delicti* of the burglary and theft of White Distributing Company. The only evidence of the ownership of the building or the beer, Mrs. White's testimony, was stricken by the court as hearsay. Mrs. White was clearly competent to testify as to the ownership of the building and contents and this evidence, viewed in conjunction with Pollard's testimony, would have established defendants' guilt of the offense. Mrs. White should be allowed to testify upon retrial of this cause although both the court and the State should be keenly aware of the proper limits of her personal knowledge of the matter.

The key argument of the defendants is that the court erred in questioning Pollard as to the truthfulness of his testimony and thereby vouching for Pollard's credibility. Defense counsel ended his cross-examination of Pollard with a lengthy interrogation about Pollard's plea of guilty in exchange for favorable treatment by the State. Pollard admitted that he had only recently agreed to testify in response to the State's offer of probation. At the time of trial, moreover, Pollard had not been sentenced. Pollard admitted that he agreed to testify only to receive the favorable treatment and escape incarceration. On redirect, the State attempted to rehabilitate Pollard by eliciting the information that Pollard had recently been offered the "deal" referred to. Pollard also stated that his answers had been true and correct. At that point, the court stated:

> "THE COURT: May I make one inquiry? Mr. Pollard, you understand the penalties of perjury, do you not?
> A. Yes.
> Q. And the answers which you have given to all questions put to you have been true and correct to the best of your knowledge?
> A. Yes.
> Q. Notwithstanding the reasons for the questions or the an-

swers or the reasons for your giving this testimony, what you have said is absolutely true and correct?

A. Yes."

In *People v. Santucci*, 24 Ill.2d 93, 180 N.E.2d 491 (1962), the court discussed the proper roles of a trial court in the interrogation of witnesses, distinguishing between questions "for the purpose of eliciting truth" or clarifying matters of fact from those which disclose "disbelief or hostility" toward the witness or a party. The court stated that the former category of questions, if properly framed and limited, serves a proper and valuable purpose in a trial while the latter "is very apt to influence [the jury] in arriving at their verdict."

In *People v. Black*, 130 Ill.App.2d 996, 266 N.E.2d 458 (1970), aff'd, 52 Ill.2d 544, 288 N.E.2d 376 (1972), the appellate court discussed an exchange between prosecution and defense counsel about the credibility of a prosecution witness during which the court stated, "This witness is sworn to tell the truth and she will tell the truth." The appellate court held that the manner of the delivery of the statement was "not ascertainable" from the record and that the meaning and impact of the judge's remarks thus could not be determined. The court noted further, however, that an immediate and lengthy admonition was given the jury that neither remarks of the court or counsel should affect the jury in its deliberations.

In *People v. Walton*, 118 Ill.App.2d 324, 254 N.E.2d 190 (1969), the trial court refused to permit defense counsel to cross-examine a prosecution witness as to possible intimidation by an agent of the State. The court then interrogated the witness about her knowledge of the obligation to testify truthfully and obtained assurances that she would. The appellate court noted the impropriety of this questioning but noted that defense counsel was allowed later to question the witness fully on the subject. This later cross-examination, the court noted, in no way served to challenge or impeach the witness' testimony and thus defendant was not prejudiced by the court's remarks.

The instant case, however, contains no such alleviating factors. Pollard was the principal witness against the defendants and was the only witness able to establish culpability. In addition, he was an accomplice to the offenses and the defendants were entitled to have the jury view his testimony with suspicion. Although the jury was instructed, in the language of Illinois Pattern Instructions, Criminal No. 3.17, to view Pollard's testimony with suspicion, the court's remarks, coming at the end of lengthy and possibly effective impeachment by defense counsel, served to rehabilitate Pollard and lend the exalted weight of the court

to Pollard's credibility. In light of the importance of Pollard's testimony to the State's case, we cannot say as a matter of law that the court's remarks did not influence the jury in its deliberations and thereby work substantial prejudice to the defendant. For this reason, the judgments must be reversed and the cause remanded for a new trial.

Because of our decision, we need not consider defendants' further contentions of error. We note, however, that the State concedes on this appeal that multiple sentences for both burglary and theft arising from a single course of conduct are improper. Additionally, we hold the evidence supports only a single conviction for these offenses. (*People v. Lilly*, 56 Ill.2d 493, 309 N.E.2d 1 (1974).) We assume that these errors will not occur in the retrial of this cause.

The judgment of the Circuit Court of Wabash County is reversed and the cause remanded for a new trial.

Reversed and remanded.

EBERSPACHER and G. J. MORAN, JJ., concur.