THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT HUTSON, Defendant-Appellant.

Fifth District   No. 5—86—0013

Opinion filed April 9, 1987.

HARRISON, J., dissenting.

Randy E. Blue and Andrew P. Zinner, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Stephen Swofford, State's Attorney, of Fairfield (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE JONES delivered the opinion of the court:

The defendant, Robert Hutson, was charged with the offenses of aggravated criminal sexual assault and aggravated criminal sexual abuse. After a jury trial, the defendant was found guilty of both offenses and sentenced to six years' imprisonment for each offense, with the sentences to run concurrently. On appeal the defendant contends that he was not proved guilty beyond a reasonable doubt of the offense of aggravated criminal sexual assault because the State failed to prove the element of sexual penetration. We affirm.

The defendant was charged with the aggravated criminal sexual assault of his 11-year-old stepdaughter, A.M.H., pursuant to section 12—14(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(1)). At trial the jury heard testimony that on August 1, 1985, the defendant called the child-victim back into his bedroom in the trailer in which they were living and told the child to lie down on the bed. The defendant pulled up the child's nightgown, began to rub her vaginal area, and then inserted his finger into her vagina. The victim, through the use of an anatomically correct doll, showed the court and the jury that the defendant had placed a finger into her vagina. The child specifically stated that the defendant was not just rubbing her but that the defendant had inserted his finger into her. The child also told the jury that "[the defendant] didn't put [his finger] all the way in" but inserted it just "a little bit." The child, using anatomically correct dolls, showed the court and the jury that the defendant had also rubbed his penis over her vaginal area and had kissed her in her vaginal area.

On cross-examination the victim testified that she was not sure whether or not the defendant had put his finger inside her and agreed with an inquiry from defense counsel that the defendant might have "just rubbed it on the outside or put his finger on the outside." On redirect examination the victim stated that while she was not sure whether the defendant had put his finger inside her, "[i]t feel [sic] like it." The defendant's activity had ended when the victim heard her mother coming home.

The victim's mother, Alice Hutson, testified that on August 1, 1985, she had left her home at about 10 a.m. to go to Bible study. The defendant, who was her husband at the time, remained home with her four children. When she arrived home later that morning, the victim had been in the parents' bedroom on the bed and the defendant had been in the bathroom. A few days later, when the child thought that she was again going to be left alone with the defendant, the child began to cry and told her mother that her "daddy" was "messing

around with her." The mother confronted the defendant concerning the incident, and he admitted to "playing with [the victim] down there with his fingers." The next day after the defendant had gone out, the mother talked further with the victim, who told her that the defendant "was playing with her down there and *** was sticking his finger in there." The mother then took her four children and left home, reporting the incident to the police later that day.

The defendant testified on his own behalf that at no time on the morning in question was he alone with the victim. He stated that his brother and sister-in-law had spent the night with them the night before. They had stayed around the next morning and were just leaving when the defendant's wife returned home from Bible study around noon. The defendant testified that his relationship with A.M. had deteriorated after she had found out that the defendant was not her father about a year before and that "[A.M.] got closer to her mother than she was to me." The defendant denied having committed any of the acts described by the victim and stated that he had never molested his stepdaughter in any way.

Both the defendant's brother and sister-in-law testified that they had remained at the defendant's home on the morning in question until the defendant's wife had returned home. The victim's brother, 10-year-old Robert, testified that on the day after his aunt and uncle had spent the night with his family, the aunt and uncle both left before his mother left home. Robert stated that his uncle had returned for a short time to get pants for his son. Thereafter, the only people at home were the defendant, himself, and his brother and sisters. Robert remembered that the defendant had called his sister, the victim, into his mother's bedroom and that both the defendant and the victim had been alone in that room for a long time. On cross-examination Robert was adamant that his aunt and uncle had left the home before his mother went to Bible study.

Following this testimony the jury returned a verdict finding the defendant guilty of the offenses of aggravated criminal sexual assault and aggravated criminal sexual abuse. The defendant was sentenced to a term of six years' imprisonment on both counts.

The sole issue on appeal is whether the evidence of sexual penetration upon the victim was sufficient to convict the defendant of the offense of aggravated criminal sexual assault. "Sexual penetration," for purposes of this case, is defined under the statute as "any intrusion, however slight, of any part of the body of one person *** into the sex organ *** of another person." (Ill. Rev. Stat. 1985, ch. 38, par. 12—12(f).) The defendant contends that the testimony of the 11-

year-old victim here was too uncertain to.sustain his conviction of aggravated criminal sexual assault beyond a reasonable doubt.

■■ It is settled that where a conviction of such an offense is based solely on the testimony of the child who is the complaining witness, the testimony must be clear and convincing or must be substantially corroborated. (See *People v. Tannahill* (1987), 152 Ill. App. 3d 882; *People v. Allison* (1983), 115 Ill. App. 3d 1038, 452 N.E.2d 148.) The issue of credibility of the witnesses is for the trier of fact, and any shortcomings in the victim's testimony does not destroy the victim's credibility but merely goes to the weight to be afforded the testimony by the trier of fact. (115 Ill. App. 3d 1038, 452 N.E.2d 148.) A reviewing court must give due weight to the determination of credibility by the trier of fact, and its finding of guilt will not be disturbed unless the evidence is so unsatisfactory as to warrant a reasonable doubt of guilt. *People v. Tannahill* (1987), 152 Ill. App. 3d 882.

■ From a review of the record, we find the victim's testimony to be sufficiently clear and convincing to sustain the defendant's conviction for aggravated sexual assault. While the victim may have been somewhat hesitant during cross-examination about the penetration of the finger, during redirect examination she told the jury that she felt the defendant's finger inside her. Moreover, during direct examination the victim demonstrated the defendant's actions by the use of an anatomically correct doll and pointed to the vaginal area as the place where the defendant had inserted his finger. The child's testimony was as accurate as possible since she did not actually see the defendant insert his finger but rather only felt the finger in her body. Following this testimony it was for the jury to decide whether or not the defendant had inserted his finger into the child's vagina. We find no error in the jury's determination here and, accordingly, affirm the defendant's conviction for aggravated criminal sexual assault.

Affirmed.

WELCH, J., concurs.

JUSTICE HARRISON, dissenting:

I cannot agree with the majority's conclusion that the victim's testimony was sufficiently clear and convincing to sustain defendant's conviction for aggravated criminal sexual assault. The record shows that although the victim was in fifth grade, she had been held back a year in school. At the hearing on her competency to testify, she was unable to say what street she lived on, she had difficulty identifying

the country in which she resided and in spelling her middle name, and she gave incorrect answers when asked to state the year of her birth and to name the day of the week on which the hearing was being held. At trial, she again gave the wrong year of her birth, she could not tell the jury what the present date was, nor could she even say what month it was.

Of course, the victim's lack of orientation as to such matters does not necessarily mean that she could not appreciate what it meant to have her vagina penetrated by the finger of another. And, as the majority correctly points out, the issue of the victim's credibility was for the jury to determine. Unlike the cases cited by the majority, however, this was not a situation where the victim's testimony was either consistent or corroborated. (*Cf. People v. Tannahill* (1987), 152 Ill. App. 3d 882; *People v. Allison* (1983), 115 Ill. App. 3d 1038, 452 N.E.2d 148.) To the contrary, the victim's initial statement on direct examination that defendant had put his finger inside her and her complaint to her mother that he "was sticking his finger in there" were sharply contradicted during the following colloquy which took place between her and defense counsel on cross-examination:

"DEFENSE COUNSEL: Now, when you were telling us what you say happened that day, you—you aren't really sure, are you, whether or not he [defendant] put his finger inside you?

VICTIM: No.

DEFENSE COUNSEL: He might have just rubbed it on the outside or put his finger on the outside? Is that right?

VICTIM: Yes."

While the State's Attorney attempted on redirect to get the victim to return to her original statement, *i.e.*, that there had been penetration, this time she could say only that "[i]t feel [*sic*] like it," and on recross, the victim repeated without equivocation that she was simply "not sure."

Even if the jury found the victim's testimony to be credible, the question remains: which version of her story should be believed? In my view, the majority's attempt to reconcile the victim's various statements is completely unpersuasive. If there is anything clear and convincing in the victim's testimony, it is that she really did not know whether or not penetration had been made. There being no other evidence tending to show penetration, I would reverse defendant's conviction for aggravated criminal sexual assault.