THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL RUSH, Defendant-Appellant.

First District (2nd Division)   No. 1—91—1194

Opinion filed July 27, 1993.

DiVITO, J., dissenting.

Law Offices of Patrick A. Tuite, Ltd., of Chicago (Patrick A. Tuite and
Brent D. Stratton, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Wo-
loshin, and Ann L. Benedek, Assistant State's Attorneys, of counsel), for
the People.

PRESIDING JUSTICE McCORMICK delivered the opinion of the court:

Defendant challenges his conviction and sentence for aggravated criminal sexual assault. We reverse and remand because the trial court made improper and prejudicial comments on the credibility of the complainant, a minor.

On September 9, 1989, Michael Rush hosted a party for the baseball team he coached. Team members ranged in age from 9 to 11 years old. Two members of the team, complainant and another minor, slept over at defendant's home after the party with their parents' permission. Before they went to sleep, defendant gave complainant a bath.

On October 5, 1989, complainant told his mother about the bath and she contacted police. Based on police discussions with complainant, the State charged defendant with aggravated criminal sexual assault and aggravated criminal sexual abuse. After the State rested its case in chief at trial, defendant moved for directed verdicts on both counts. The trial court dismissed the aggravated criminal sexual abuse count due to a defect in the indictment. Thus, the jury decided only the aggravated criminal sexual assault count.

To prove that charge, the State needed to prove that defendant committed an act of sexual penetration upon complainant, when defendant was over 17 years old and complainant was under 13 years old. (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1).) Complainant was 9 and defendant was 34 at the time of the party. The only issue contested at trial was whether defendant committed an act of sexual penetration upon complainant. The statute defines sexual penetration as "any intrusion, however slight, of any part of the body of one person *** into the sex organ or anus of another person." Ill. Rev. Stat. 1989, ch. 38, par. 12—12(f).

Complainant testified that after the party defendant watched movies with him and the other boy. Defendant rubbed complainant's back "down to [his] tailbone," pulling complainant's pants halfway down. Defendant told complainant to take a bath, and complainant answered that he took one before coming over. Defendant told him to take another. Defendant accompanied complainant into the bathroom, told him to take off his clothes, and washed him. Defendant rubbed complainant's penis for 10 seconds, then "stuck his finger in [complainant's] butt" and wiggled it for five seconds. Defendant told complainant to dry off and get ready for bed.

Complainant and the other boy slept in defendant's bed, with defendant between them. Defendant again rubbed complainant's back down to the tailbone. Defendant gave the other boy a bath in the morning, and after that boy went home, complainant went to breakfast with defendant. Defendant said to complainant, "don't tell anyone" about the bath.

On cross-examination, complainant admitted that defendant remained fully clothed while giving him the bath and he did not talk dirty to him or kiss him. The morning after the party complainant called home and asked his mother for permission to stay with defendant through breakfast. Although he experienced pain for the day after the party, complainant did not miss school or any of his daily ballet classes following the incident.

On redirect the State asked, "Now you said that defendant put his finger inside of you and wiggled it?" Complainant answered, "Yes." This was the first time anyone had asked whether defendant's finger was inside complainant. Complainant had said on direct only that the finger was "in his butt"; no one had sought clarification of whether this meant between his buttocks or in his anus.

The State continued:

"Is there any mistake in your mind? Could that have been mistake—excuse me. Are you mistaken about that or are you sure that's what happened?"

Complainant hesitated somewhat and looked around the courtroom. He said:

"Um. Um. I'm not sure—."

The prosecutor cut him off with the start of another question, and defense counsel objected to the interruption. The trial court asked complainant if he had understood the prosecutor's question. Complainant said "Ya." The prosecutor suggested that complainant had not understood the question, defense counsel objected, and the trial court again asked complainant if he had understood the prosecutor's question. This time complainant answered "no."

The trial court then asked complainant, "Are you sure that this gentleman here put his finger in your rectum?" This was the first use of the word "rectum" in complainant's examination. The prosecutor immediately interjected that she did not know whether complainant knew what "rectum" meant. The trial court changed the word to "butt" and asked, "Are you sure he did that?"

Complainant again hesitated, and before he answered, the prosecutor interjected, "Did you feel it inside of you?" Defense counsel

again objected to the interruption, and before the witness answered the trial court posed yet another question:

"Are you sure he put his finger in your butt?

THE WITNESS: Yes.

THE COURT: Any doubt in your mind he did that?

THE WITNESS: No.

THE COURT: Very important that you tell the truth now.

THE WITNESS: Yes.

THE COURT: I know you were telling the truth. Are you sure he put his finger in your butt?

THE WITNESS: Yes."

The prosecution resumed redirect examination. Following re-cross-examination, defense counsel moved for a mistrial based on the trial court's statement that the witness told the truth. The trial court denied the motion.

Following the next witness' testimony and after a lunch break, the State asked the trial court to remind the jury that nothing the court said about credibility should influence the verdict. Defense counsel objected on grounds that the requested remark would highlight the improper comment about complainant's testimony. The trial court told the jury:

"I'm not the one who is going to decide whether a witness is credible or not. It is up to you people. So, if there was any misinterpretation or any idea of any of the jurors I may have been leaning one way or another with a certain witness I would like you to take that out of your mind."

The trial court's comments to a similar purpose continued for four paragraphs.

The assistant State's Attorney then read to the jury a statement defendant signed in which defendant admitted that he washed complainant before bed on the night of the party, he slept in his bed with complainant and the other boy, and he washed the other boy the next morning. He did not admit to any sexual penetration.

The boy who was with complainant and defendant that night testified that when defendant washed him defendant rubbed his penis for about five seconds. He did not say that defendant touched his anus. Defendant did not touch him during the night.

Complainant's mother testified that she took complainant to the hospital for an examination on October 17, almost two weeks after complainant told her about the incident and 38 days after it occurred.

Dr. Joel Feinstein testified that he examined complainant on October 17. He noticed some bulging and bluish discoloration around com-

plainant's anus. The anus did not contract symmetrically. He admitted that even if there has been penetration into the anus, there may be normal findings, but in this case he found the anal area "definitely abnormal and consistent with sexual trauma." He testified, "[W]hat I see are findings of internal trauma which would be due to penetration, forceful penetration into that area." The trauma could have been the result of the insertion of an adult finger. He admitted that some of the marks he found could have been caused by recent trauma, but they also could have been the result of a trauma which occurred more than a month before the examination. He agreed that in most cases 38 days after penetration there would be no abnormality, "so if you have findings then that's more significant." He said that it is difficult to determine the date of injuries to the anal area, and he did not determine how long before the examination the injuries occurred.

Dr. Robert Fay testified for the defense that the findings Dr. Feinstein reported were probably caused by a recent injury, within 7 to 10 days of the examination. This would mean that the injuries occurred after complainant told his mother of the incident with defendant. Dr. Fay believed that the bluish areas were probably caused by "fingernail scratching *** or even poor wiping." The asymmetrical contraction indicated "a major tear in the anal muscles," which "absolutely" could not be the result of a five-second digital penetration.

The jury found defendant guilty of aggravated criminal sexual assault and the court sentenced defendant to 20 years' imprisonment.

Defendant contends that the State did not present sufficient evidence to prove him guilty beyond a reasonable doubt of aggravated criminal sexual assault. For sex offense convictions:

> "[t]he test to be employed on review ' "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (Emphasis in original.) *People v. Schott* (1991), 145 Ill. 2d 188, 203, 582 N.E.2d 690, quoting *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.

Defendant at trial contended only that he never put his finger in complainant's anus. Complainant testified that defendant put his finger in his "butt"; on redirect he clarified that defendant's finger was inside him. With the trial court's prompting, complainant said that he had no doubt that defendant put his finger in his butt. Defendant contends that the conviction cannot stand because complainant said he

was not sure in response to some questions concerning whether defendant inserted his finger.

■■ In *People v. Hutson* (1987), 153 Ill. App. 3d 1073, 506 N.E.2d 779, the victim, a minor, testified that defendant put his finger in her vagina, but on cross-examination, she said she was not sure if his finger went inside her. On redirect she said it felt like he put his finger inside her. (*Hutson*, 153 Ill. App. 3d at 1074.) The appellate court upheld the conviction, although it was based solely on the child's testimony, holding that "any shortcoming[ ] in the victim's testimony does not destroy the victim's credibility but merely goes to the weight to be afforded the testimony by the trier of fact." (*Hutson*, 153 Ill. App. 3d at 1076.) Similarly, complainant's hesitations and expressions of uncertainty here affect only the credibility of his testimony, and as such they were matters for the jury to weigh. (See also *People v. Tannahill* (1987), 152 Ill. App. 3d 882, 885, 504 N.E.2d 1283.) The expression of uncertainty does not alone provide grounds for reversal.

■■ Complainant's testimony was substantially corroborated by Dr. Feinstein, who testified that complainant's anal area was "definitely abnormal" and that the abnormality showed "internal trauma which would be due to *** forceful penetration," possibly by an adult finger. The jury did not need to accept Dr. Fay's opinion that the trauma that caused the abnormal findings occurred no more than 10 days before the examination, and the findings could not be the result of a five-second digital penetration which happened 38 days before the exam. While Dr. Feinstein could not put any limits on the possible date on which the trauma occurred, his testimony together with complainant's appears to be a sufficient basis for the jury to find defendant guilty beyond a reasonable doubt of an act of sexual penetration.

The State argues that the testimony of the boy who stayed with defendant and complainant on the night of the party supported the jury's finding by showing defendant's *modus operandi*. That boy did not say that defendant put his finger in his butt or committed any act of sexual penetration. Insofar as the testimony showed *modus operandi*, it showed that defendant did *not* put his finger in the anuses of boys with whom he had contact similar to the contact he had with complainant. Thus, that testimony supports defendant's argument, not the State's argument, on the sole issue contested at trial. Similarly, defendant's statement to the police fails to corroborate defendant's testimony on the sole contested issue. However, the testimony of the other boy and defendant's statement do not render complainant's testimony so improbable as to leave a reasonable doubt of defendant's guilt. Although the evidence was closely balanced and the case turned

on the credibility of complainant's testimony, replete with expressions of uncertainty, since the jury apparently chose to believe complainant, it had adequate grounds for finding defendant guilty beyond a reasonable doubt.

■ Defendant contends that the trial court prejudicially invaded the province of the jury by stating to complainant, in the presence of the jury, "I know you were telling the truth." The appellate court recently restated the principles applicable to review of trial court comments:

> "[T]he trial judge himself must *** not make any comments or insinuations indicative of an opinion on the credibility of a witness. [Citation.]
>
> One of the reasons behind the rule that the trial judge must exercise a high degree of care to avoid influencing the jury in any way [citation] is based on the belief that the trial judge has immense influence over the jury. [Citation.] Another very fundamental reason is that every defendant is entitled to a trial that is free from improper and prejudicial comments on the part of the trial judge. *** For the comments or questioning by a trial judge to constitute reversible error, the defendant must demonstrate that they were a material factor in the conviction or that prejudice appears to have been the probable result." *People v. Brown* (1990), 200 Ill. App. 3d 566, 576-77, 558 N.E.2d 309.

These principles apply even when the witness is a minor. (See *People v. Bradley* (1984), 128 Ill. App. 3d 372, 378, 470 N.E.2d 1121.) Although Illinois courts have not confronted trial court behavior possibly intended to calm a frightened testifying child, courts in other States have held that in these cases, as in any other criminal case, the trial judge must not, either by her words or acts, give the jury the impression that the judge finds the child's testimony credible. (See *State v. Suttles* (Tenn. 1989), 767 S.W.2d 403; *State v. Zamorsky* (1978), 159 N.J. Super. 273, 387 A.2d 1227.) We agree. The defendant has a right to a trial free from a judge's comments bolstering the credibility of the State's witnesses even where the judge might have intended his acts only to relax a frightened minor witness.

The State does not argue that the trial court's comment was proper. Instead the State contends that the remark could not have prejudiced the jury against defendant.

In *People v. Crane* (1976), 34 Ill. App. 3d 850, 341 N.E.2d 97, the State's key witness in a burglary case was the defendant's accomplice. On cross-examination the witness admitted that the State

agreed to recommend probation for him in exchange for his guilty plea and his testimony against defendant, and he agreed to testify to escape incarceration. The trial court then asked the witness:

"[Y]ou understand the penalties of perjury, do you not?

A. Yes.

Q. And the answers which you have given to all questions put to you have been true and correct to the best of your knowledge?

A. Yes.

Q. Notwithstanding the reasons for the questions or the answers or the reasons for your giving this testimony, what you have said is absolutely true and correct?

A. Yes." *Crane*, 34 Ill. App. 3d at 853-54.

The appellate court held that the questions served to rehabilitate the witness "and lend the exalted weight of the court" to his credibility. (*Crane*, 34 Ill. App. 3d at 854.) We find that the questioning by the trial court in this case, together with the comment that it knew the victim was telling the truth, improperly lent the exalted weight of the trial court to the victim's testimony.

The State contends that the trial court in this case cured any error with its later comment that it did not intend to express any opinion on credibility, and the jury was to evaluate the credibility of the witnesses. In *People v. Black* (1970), 130 Ill. App. 2d 996, 266 N.E.2d 458, *aff'd* (1972), 52 Ill. 2d 544, 288 N.E.2d 376, the trial court recognized that it had made an improper remark and immediately admonished the jury to ignore it. The appellate court affirmed the conviction, finding that the immediate retraction partially cured the effect of the improper comment, and the error was not prejudicial because the evidence of guilt was overwhelming.

Here, the trial court did not immediately admonish the jury to disregard the remark. The trial court did not recognize its error until defense counsel pointed it out in chambers, when counsel could comment without calling undue attention to the trial court's apparent assessment of credibility in the jury's presence. The trial court attempted to cure the prejudice from the improper remark after the child and the following witness finished testifying, and after lunch. By that time the jurors had already made their preliminary evaluations of the witnesses' credibility, after absorbing the trial court's remarks. The appellate court has taken judicial notice that an instruction to disregard an improper remark "tends to bring the improper remark even more sharply to the attention of the jury." (*People v. Arnold* (1973), 12 Ill. App. 3d 826, 831, 299 N.E.2d 446.) For just that reason defense coun-

sel here asked the trial court not to admonish the jury. The trial court's lengthy admonishment highlighted the improper remark and focused the jury's attention on the trial court's opinion of the credibility of the witness. The belated admonishment here, unlike the admonishment in *Black*, may well have increased the prejudicial effect of the improper remark.

This case is also unlike *Black* in the balance of the evidence. The evidence here is closely balanced, turning on the credibility of a single witness, and the uncertainty of that testimony led to the exchange in which the court made its improper remark. Courts are more likely to find prejudicial effect of errors in cases where the evidence is closely balanced. See *People v. Weaver* (1982), 92 Ill. 2d 545, 560, 442 N.E.2d 255.

In *Crane* the trial court instructed the jury to view the testimony of the accomplice with suspicion, but the appellate court found that the instruction could not offset the prejudicial effect of the questioning, and therefore it reversed the convictions and remanded for retrial. *Crane*, 34 Ill. App. 3d at 855; see also *People v. Rogers* (Colo. App. 1990), 800 P.2d 1327, 1329.

In light of the closely balanced evidence here, where the case hinges on the credibility of the uncertain testimony of a child, we cannot say that the trial court's admonition completely cured the prejudicial effect of the comment and questioning. Defendant here, like the defendant in *Crane*, has sufficiently demonstrated that prejudice to the defendant was the probable result of the trial court's comments. Because of the improper comment lending the authority of the court to support the credibility of the State's key witness, we must reverse the conviction and remand for retrial.

Reversed and remanded.

HARTMAN, J., concurs.

JUSTICE DiVITO, dissenting:

I respectfully dissent from the majority's conclusion that this conviction must be reversed and the case retried. I do so because the majority, though stating the proper standard of review, fails to apply it correctly, thus erroneously concluding that the trial judge's comment constituted such prejudicial error that his corrective efforts were ineffective.

By dissenting, I in no way condone the trial judge's comment; that it was improper is conceded by everyone. Indeed, the principle

that a judge should not vouch for the credibility of a witness in the presence of the jury is well established and needs no vindication here.

The majority provides the proper standard for our review of this issue:

> "In reviewing the trial judge's alleged errors, this court must determine whether reversible error occurred. For the comments or questioning by a trial judge to constitute reversible error, the defendant must demonstrate that they were a material factor in the conviction or that prejudice appears to have been the probable result." (*People v. Brown* (1990), 200 Ill. App. 3d 566, 577, 588 N.E.2d 309.)

But, having provided the proper standard, without analysis and relying solely upon *People v. Crane* (1976), 34 Ill. App. 3d 850, 341 N.E.2d 97, the majority draws the conclusion that the trial judge's conduct "improperly lent the exalted weight of the trial court to the victim's testimony." 250 Ill. App. 3d at 537.

The majority's reliance upon *Crane* is misplaced. In that case, the appellate court made clear that the facts it dealt with presented no "alleviating factors." There, the trial court put to the principal witness, an accomplice, leading questions designed to establish the witness' knowledge of the penalties for perjury; that his answers were "true and correct"; and that notwithstanding his motivation to testify, what he said was "absolutely true and correct." This questioning, unlike the situation here, came "at the end of lengthy and possibly effective impeachment by defense counsel, served to rehabilitate [the witness] and lend the exalted weight of the court to [the witness'] credibility." (*Crane*, 34 Ill. App. 3d at 854-55.) In that case, except for the pattern instruction concerning accomplice testimony at the end of the trial, there was no curative instruction given by the trial court.

In contrast, here "alleviating factors" are plentiful. The trial judge's comment was made during a proper attempt to clarify complainant's testimony and there is no indication that the comment was intended to rehabilitate the witness or lend the "exalted weight" of the court to his credibility. Rather, the circumstances of the trial justified the judge's intervention. The complaining witness was a young child who hesitated, apparently was unfamiliar with certain words referring to parts of the anatomy, and was testifying while being interrupted by the prosecutor and by defense objections. We have held that a trial court should intervene in the questioning of a witness if justice requires that a fact be better developed or a line of inquiry more thoroughly pursued. *People v. Puhl* (1991), 211 Ill. App. 3d 457, 471, 570 N.E.2d 447 (holding that it was "not only proper but necessary" for

the trial court to interrupt the State's questioning of a minor complainant in order to clarify his version of the alleged sexual assault); see also *People v. Hicks* (1989), 183 Ill. App. 3d 636, 646, 539 N.E.2d 756.

In *Cupp v. Naughten* (1973), 414 U.S. 141, 142, 38 L. Ed. 2d 368, 371, 94 S. Ct. 396, 398, in a case where the defendant neither testified nor offered any witnesses, the trial judge's charge to the jury included this instruction: "Every witness is presumed to speak the truth." Pursuant to due process analysis under the fourteenth amendment, the United States Supreme Court reversed the court of appeals' reversal of the defendant's conviction, because the jury was properly instructed on the burden of proof, the presumption of innocence, and the appropriate standards for judging witness credibility. Similarly, in this case the trial judge gave all the instructions deemed to have an ameliorating effect in *Naughten*. Moreover, here the trial judge's misstatement not only did not carry the weight of a final instruction, he specifically instructed the jury to disregard it.

Also, despite the majority's statement to the contrary, the evidence against defendant in this case was not closely balanced. Complainant's testimony[1] was substantially corroborated by defendant's own statement to the police, in which he admitted that complainant and the other boy spent the night at his house following a party for their baseball team. In that statement, he admitted that he gave complainant a bath that night and the other boy a bath the next morning, and that both boys slept in the bed with him and wore shorts while he wore underwear. Although in his statement he did not admit placing his finger in complainant's anus, that aspect of complainant's testimony was corroborated by Dr. Feinstein's findings, and by the fact that, although contested, complainant's testimony was not rebutted and remained constant through defense counsel's cross- and re-cross-examinations. See *People v. Walton* (1969), 118 Ill. App. 2d 324, 332, 254 N.E.2d 190 (holding that because defense counsel had adequate opportunity to cross-examine the witness, and could not challenge or impeach the witness concerning the very area in dispute, the defendant was not prejudiced by the trial court's erroneous remarks).

---

[1]There is no basis for the majority's assertions that complainant's testimony was "replete with expressions of uncertainty" (250 Ill. App. 3d at 536) and that it was "uncertain" (250 Ill. App. 3d at 538). On the contrary, except for the confusion evidenced by the quoted portions of his testimony, complainant displayed no uncertainty about any of the matters about which he testified, including the fact of penetration.

Furthermore, the majority's statement that the "trial court did not immediately admonish the jury to disregard the remark" (250 Ill. App. 3d at 537) is disingenuous.[2] Despite the majority's criticism that the limiting instruction was not given until after the lunch break,[3] defendant did not make a contemporaneous objection to the trial judge's remark.[4] Instead, defense counsel moved for a mistrial only after he completed his re-cross-examination of complainant and after complainant had been excused as a witness. Thus, defendant's own actions, constituting waiver in most instances, denied the trial judge an opportunity to remedy the situation at an earlier time. Under the circumstances, the trial judge acted promptly and effectively.

Finally, the trial judge's limiting instruction sufficiently negated any prejudice defendant may have suffered. Our supreme court has recently reiterated that limiting instructions are effective in reducing the prejudicial effect of a court's improper comments. (*People v. Peeples* (1993), 155 Ill. 2d 422, 467-68.) In *Peeples*, before the entire

---

[2]In its effort to distinguish this case from the holding in *People v. Black* (1970), 130 Ill. App. 2d 996, 266 N.E.2d 458, the majority says that there, "the immediate retraction partially cured the effect of the improper comment, and the error was not prejudicial because the evidence of guilt was overwhelming." (250 Ill. App. 3d at 537.) A reading of *Black*, however, reveals that the majority places undue emphasis on the "immediacy" of the trial court's retraction, and that the overwhelming nature of the evidence, though alluded to earlier in the opinion concerning a different issue, was not related to the holding concerning the court's improper comment.

[3]The majority's gratuitous statement, "[b]y that time the jurors had already made their preliminary evaluations of the witnesses' credibility, after absorbing the trial court's remarks" (250 Ill. App. 3d at 537) has absolutely no record support and is inconsistent with the trial judge's specific admonition, before the beginning of trial, that the jury was to keep an open mind and refrain from making a decision until the close of the evidence.

[4]The majority says "defense counsel pointed [the error] out in chambers, when counsel could comment without calling undue attention to the trial court's apparent assessment of credibility in the jury's presence." (250 Ill. App. 3d at 537.) Of course, the need for a hearing outside the jury's presence in no way implicates the well-established requirement of a contemporaneous objection to preserve error. A simple sidebar request after the trial judge made his statement would have resulted in a hearing outside the jury's presence.

If, however, by the above-quoted statement, the majority intends to explain and condone defendant's delay in objecting, it must be rejected. Concern about "calling undue attention" to error is inconsistent with the contemporaneous objection rule. Arguably, every objection has the danger of calling undue attention to the error that is addressed; for that reason, there is no "undue attention" exception to the contemporaneous objection rule. In any event, how could it be said that there was danger of calling *undue attention* to error the majority deems to be fatal?

venire the trial court expressed its agreement with a prospective juror's opinion that the rules of evidence should be relaxed because they "tied" the hands of the prosecution. On appeal, the supreme court held that the trial court improperly allowed the venire to hear the remarks, but found the error to be harmless because, in its written instructions to the jury, the court said that it did not intend to indicate an opinion as to the evidence or what the verdict should be. *Peeples*, 155 Ill. 2d at 467-68.

In the instant case, the trial judge emphatically instructed the jury that he had formed no opinion as to the outcome of the case and that the jury was required to draw its own conclusions. The majority provides only a small portion of the trial judge's limiting instruction. An examination of the entire statement reveals that the judge acted carefully to cure the misstatement without highlighting it:

> "[THE COURT]: Ladies and gentlemen, before we begin again it was brought to my attention that possibly during part of this trial I may have made a statement or said something which could have been construed the wrong way by the jury, if they even heard it.
>
> I don't plan on repeating what I said. But, remember that I told you at the beginning of the trial that you will decide the credibility of the witnesses. Not me. And, if a statement was made as to possibly credibility of a witness it was not even to be. [*sic*] My opinion as to whether or not that witness was credible or not. As I told you before we started the trial I'm not the one who is going to decide whether the witness is credible or not. It is up to you people. So, if there was any misinterpretation or any idea of any of the jurors I may have been leaning one way or another with a certain witness I would like you to take that out of your mind. Because I'm—I know I have not made up my mind in this case.
>
> I have not made up my mind in this case. I have not listened to case [*sic*]—It is not for me to make up my mind. It is not my job. I'm not going to make the decision in this case, you are. So, as far as anything about credibility of the witnesses that by my statement may have been said to [*sic*] by me I want you to disregard that. Because it was not said in that vain [*sic*].
>
> Like I said you may not have even heard what I said when I made the statement. Just remember the rules that I told you before. I will rule on the law. You will rule on the

facts and evidence. And, you will decide the credibility of every witness, not me. Do you all understand that?

[ALL JURORS]: Yes."

Thus, the jury was fully informed of its responsibility to determine the credibility of the witnesses, that the trial judge did not have that responsibility, and that it was not to be influenced by the trial judge's earlier remark. By their response in unison to the trial judge's specific question, the jurors stated that they understood his instructions. There is thus no basis for concluding, as the majority does, that "prejudice to the defendant was the probable result of the trial court's comments." (250 Ill. App. 3d at 538.) Likewise, there is no basis for the majority's conclusional statements that "[t]he trial court's lengthy admonishment highlighted the improper remark and focused the jury's attention on the trial court's opinion of the credibility of the witness" (250 Ill. App. 3d at 538), or that the "belated admonishment" in this case "may well have increased the prejudicial effect of the improper remark" (250 Ill. App. 3d at 538). Those statements by the majority are inconsistent with the long-established principle, found in *Peeples* and in countless other cases, that limiting instructions have curative value.

Moreover, in addition to the trial judge's curative instruction soon after the event, the jury received the following instruction as part of Illinois Pattern Jury Instructions, Criminal, No. 1.01 (2d ed. 1981):

"Neither by these instructions nor by any ruling or remark which I have made do I mean to indicate any opinion as to the facts or as to what your verdict should be."

Because "[f]aith in the ability of a properly instructed jury to separate issues and reach a correct result is the cornerstone of the jury system" (*People v. Illgen* (1991), 145 Ill. 2d 353, 376, 583 N.E.2d 515), there is simply no basis for concluding here, in conformance with the appropriate standard of review, that defendant has demonstrated that the trial judge's improper comment either was a material factor in his conviction or that prejudice was the probable result. On the contrary, this record indicates that the trial judge adequately admonished the jury and that his earlier remark served no role in the ultimate verdict.

This conviction should be affirmed.