THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ALLISON JENKINS, Defendant-Appellant.

First District (4th Division) No. 1—87—0449

Opinion filed January 17, 1991.—Rehearing denied March 11, 1991.

250

Michael J. Pelletier and David Goldwin, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Paula Carstensen and Thomas O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JOHNSON delivered the opinion of the court:

Defendant was charged by information with delivery of a controlled substance. (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(c).) Following a jury trial, defendant was found guilty and sentenced to a term of six years in the Illinois Department of Corrections. Defendant now brings this appeal.

The following issues are before this court for review: (1) whether defendant was denied a fair trial when the court permitted the People to elicit testimony concerning a separate, uncharged attempted delivery of a controlled substance; (2) whether defendant was denied effective assistance of counsel when defense counsel failed to object to the jury instructions and failed to tender alternative instructions to limit the jury's consideration of the uncharged alleged attempted sale of a controlled substance; (3) whether defendant was denied a fair trial when, in the closing argument, the State shifted the burden of proof, misstated the evidence, and articulated its personal opinion that the police officer witnesses were credible; (4) whether the trial court's jury instruction that the People's exhibit number 2 was a controlled substance constituted plain error; and (5) whether the trial court abused its discretion by sentencing defendant to six years' imprisonment.

We affirm.

BACKGROUND

Officers Lemuel Hogue and Fred Guerra were the principal witnesses for the People. Officers Guerra and Hogue were members of the Northeastern Metropolitan Drug Enforcement Group (hereinafter the MEG). The MEG is a special task force under the authority of the

Cook County sheriff. MEG officers investigate drug activity and purchase drugs from alleged drug dealers in order to facilitate their arrest.

Officer Hogue testified that he met defendant, Allison Jenkins, on January 8, 1986. During this meeting, defendant gave Officer Hogue his telephone number. On January 10, 1986, Officer Hogue telephoned defendant and arranged to purchase cocaine from him for $325. The two men agreed to meet on that day at the intersection of Howard and Clark Streets in Chicago, Illinois, at 2 p.m. Later that day, Officer Hogue met defendant at the intersection. Defendant entered Agent Hogue's car. Subsequently, Officer Hogue drove defendant to a building located at 7455 North Greenview Street in Chicago. Defendant exited Agent Hogue's car and entered one of the apartments at that address. Several minutes later, defendant returned to the car and handed Officer Hogue a package of white powder. Officer Hogue paid defendant $325 in exchange for the package. Officer Hogue testified that after the transaction, defendant told him "the cocaine was good shit *** [and] [i]f I need to step on it, I could make another eight out of it *** and make my money back." Then, defendant left the car and Officer Hogue drove to meet the surveillance team that observed the entire transaction.

One of the members of the surveillance group was Fred Guerra. Officer Guerra later testified that he established a surveillance unit at the intersection of Clark and Howard Streets. Officer Guerra observed Agent Hogue arrive at the intersection and speak to a black male who was in a rust-colored vehicle. Officer Guerra then witnessed the black man enter Agent Hogue's automobile. Subsequently, Officer Guerra followed Agent Hogue and defendant to an apartment building at 7455 North Greenview Street. The officers assigned to the surveillance unit positioned themselves approximately 100 to 150 yards from the building. The witness saw defendant leave the car and return later. Upon returning, defendant and Officer Hogue had a short conversation. Defendant then left the car, and the agent drove away. Agent Guerra identified defendant as the man he saw with Officer Hogue.

After Officer Hogue purchased the powder from defendant, he tested the specimen in the La Petite Restaurant. The field test indicated that the powder contained cocaine. Agent Hogue placed the cocaine in a package and labeled the package with the number 86038MC, the initials ALCH, and the date "1-10-86." The package was later labeled People's Exhibit No. 2. On March 26, 1986, Officer

Hogue obtained a warrant for defendant's arrest. Defendant was arrested on March 27, 1986.

Agent Hogue tendered the cocaine to Karl Larsen, a chemist at the State laboratory. Mr. Larsen testified that he tested the white powder. He performed a series of color tests, a gasro chromatography test, an infrared spectrophotometer test, and finally a polarimeter test. The results of all of these tests showed that the substance was cocaine. The parties stipulated that the powder which Officer Hogue purchased from defendant was the same powder tested by Karl Larsen. After Mr. Larsen testified, the People rested. Upon completion of the People's case, defendant made a motion for a directed verdict which the court denied.

When the defense presented its case, defense counsel asked Officer Hogue during cross-examination whether he met with defendant at any time other than on January 8, January 10, or March 27, 1986. Agent Hogue admitted that he saw defendant upon an additional occasion, approximately two weeks after the alleged sale. Defense counsel asked Agent Hogue if he filed a report of this meeting. During a subsequent direct examination by the People, Officer Hogue testified that he attempted to complete another sale with defendant in late January, but that this sale was not completed because defendant fled after noticing one of the surveillance vehicles. Officer Hogue stated that he did not file a report of this incident because there was no sale.

Agent Hogue was also questioned about the discrepancy between the two case reports of the sale that were filed. Officer Hogue had submitted a police report and an incident report detailing the drug purchase. Agent Hogue testified to the information he wrote in the police report. The police report indicates that defendant spoke with an accent. The report also states that defendant had a scar on the right side of his forehead, that he weighed 145 pounds, and that he was 5 feet 7 inches in height. However, Officer Hogue recorded different information about defendant in his incident report. The incident report described defendant as standing 6 feet tall and weighing 185 pounds. The incident report makes no reference to a scar or an accent.

The defense also summoned Officer Guerra to testify about the discrepancy between the two reports. Agent Guerra testified that the incident report was written by his partner, Officer Slupski. Officer Guerra further testified that the report was typed and initialed by one of the secretaries in the office. Agent Guerra also stated that the police report was written by Officer Hogue and typed and initialed by a different secretary. He also stated that it is not unusual for one agent

to copy the information in another agent's report before submitting the report to be typed. When the People subsequently conducted a direct examination, Officer Guerra testified that the surveillance report and Hogue's police report were typed by different secretaries. The defense rested.

After both sides made closing arguments, the trial court instructed the jury. The jury instructions were tendered by the People, and the defense made no objections. The jury was allowed to examine the cocaine. However, the judge ruled that the jury was not allowed to keep People's exhibit No. 2 in the jury room because "it is a controlled substance." The jury found defendant guilty of delivering a controlled substance.

After the verdict was rendered, defendant moved for a new trial and for an arrest of judgment. (Ill. Rev. Stat. 1985, ch. 38, pars. 116—1, 116—2.) Defendant argued that his conviction should be reversed based upon discrepancies between Officer Hogue's testimony and his police reports, because the discrepancy in the reports showed that the People failed to prove a *prima facie* case. In the alternative, defendant argued that a new trial was warranted because the People violated discovery rules by not informing the defense of the attempted transaction between defendant and the MEG agents which occurred approximately two weeks after the date of the transaction for which defendant was charged. The trial court denied these motions.

At the sentencing hearing, the court heard arguments in aggravation and mitigation. The People argued, in aggravation, that defendant was an immigrant from Belize who sold narcotics instead of taking advantage of the legal opportunities available in the United States. The defense argued, in mitigation, that defendant had lived in the United States for 10 years and that this was his first arrest. The defense also stated that defendant had a wife and two children. The court then sentenced defendant to six years in the Illinois Department of Corrections. Defendant now brings this appeal.

Opinion

I

First, defendant contends that he was denied a fair trial when the court permitted the People to elicit testimony concerning another uncharged delivery of a controlled substance. Defendant believes that he was substantially prejudiced by the introduction of this evidence for the following reasons: First, defendant opines that the officer had a

limited opportunity to observe the offender, and the inconsistencies between the description of the offender in the police report and defendant's physical characteristics cast doubt on the accuracy of the identification of defendant; second, defendant maintains that there was no proof that the second meeting took place, and no satisfactory explanation as to why no report was made of the event.

In the alternative, defendant argues that the trial court should have confined the evidence regarding the meeting to the issue of defendant's identity. Defendant relies upon *People v. Olson* (1981), 96 Ill. App. 3d 193, *People v. Butler* (1978), 63 Ill. App. 3d 132, and *People v. Blakely* (1972), 8 Ill. App. 3d 78, in support of his assertion.

The People maintain that defendant "opened the door" to questions about the attempted drug sale when defense counsel inquired on cross-examination about other meetings between defendant and the police witness, and where on re-cross-examination defense counsel elicited testimony from the People's witness about the fact that no report was filed concerning the second meeting. In the alternative, the People argue that the admission of this testimony was harmless error.

■ The trial court has the discretion to regulate the subject of inquiry and the extent of inquiry during cross-examination. (*People v. Williams* (1977), 66 Ill. 2d 478, 487.) "The decision with respect to the admissibility of evidence of other crimes, wrongs, or acts will be overturned only if there exists a *clear abuse of discretion*" (emphasis added) (M. Graham, Cleary & Graham's Handbook of Illinois Evidence, §404.5, at 202 (5th ed. 1990), citing *People v. Funches* (1978), 59 Ill. App. 3d 71), and the admission results in manifest prejudice to the defendant. *People v. Williams* (1977), 66 Ill. 2d 478, 487.

■ "As a general rule, evidence of other offenses which are separate and distinct from the crime for which a defendant is on trial is inadmissible." (*People v. Goodman* (1982), 109 Ill. App. 3d 203, 212.) Usually, evidence of other offenses is inadmissible because it is unfairly prejudicial to the defendant. (People v. Bryan (1987), 159 Ill. App. 3d 46, 51.) "Evidence of 'other' crimes [is inadmissible] *** unless it is first shown that the crime *** or act actually took place[,] and that the defendant committed it or participated in its commission." (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §404.5, at 202 (5th ed. 1990), citing *People v. Brozan* (1987), 163 Ill. App. 3d 73; *People v. Scott* (1973), 13 Ill. App. 3d 620.) However, such evidence may be admissible even where defendant has not been proved guilty beyond a reasonable doubt. M. Graham, Cleary & Graham's Handbook of Illinois Evidence §404.5, at 202 (5th ed. 1990), cit-

ing *Wernowsky v. Economy Fire & Casualty Co.* (1985), 106 Ill. 2d 49; see *People v. Smith* (1972), 3 Ill. App. 3d 958.

■ The Illinois Supreme Court has held that "a defendant may not interject an issue into his case and then contend that the bringing of it to the attention of the jury was erroneous." (*People v. George* (1971), 49 Ill. 2d 372, 379.) Our supreme court has also mandated that "a party cannot complain that evidence which he put into the record is prejudicial to him." (*Casson v. Nash* (1978), 74 Ill. 2d 164, 172.) A defendant who procures, invites, or acquiesces in the admission of improper evidence cannot complain with respect to the admission of said evidence. *People v. Payne* (1983), 98 Ill. 2d 45, 50.

However, there is an exception to the aforementioned rule. In *People v. Goodman* (1982), 109 Ill. App. 3d 203, this court found that the fact that defense counsel asked questions to counter negative inferences raised by the People did not open the door to extensive testimony concerning other crimes for which defendant was not charged (*Goodman*, 109 Ill. App. 3d at 213), and that the admission of this information constituted reversible error (*Goodman*, 109 Ill. App. 3d at 214). The court reasoned that "the erroneous admission into evidence [by defendant,] of another offense with which defendant had been charged and acquitted[,] and the State's prejudicial comments during closing argument were sufficiently egregious to have deprived defendant of a fair trial." *Goodman*, 109 Ill. App. 3d at 214.

■ We find that the admission of evidence of a second attempted sale was harmless error. Harmless error is "an error committed in the progress of the trial below *** which was not prejudicial to the rights of the party assigning it." (Black's Law Dictionary 487 (5th ed. 1979).) Harmless error is error whereby "[defendant] could not have been legally entitled to prevail" even if the error had not been committed. (Black's Law Dictionary 487 (5th ed. 1979).) "This court has stated that the allowance of inadmissible evidence can or will be held to be harmless error if 'the alleged erroneously admitted evidence did not prove an element of the crime not established by other properly admitted evidence.' " (*People v. Lee* (1987), 162 Ill. App. 3d 972, 981, quoting *People v. Bundy* (1979), 79 Ill. App. 3d 127, 134.) Harmless error is "not sufficient in nature or effect to warrant reversal, modification, or retrial." Black's Law Dictionary 487 (5th ed. 1979).

■ We find that the admission of evidence of the additional attempted sale by the trial court constituted harmless error. In this case, as in *People v. Goodman* (1982), 109 Ill. App. 3d 203, the trial court admitted evidence, elicited on cross-examination, of defendant's involvement in another criminal act. Furthermore, negative inferences

were created by the testimony. However, the error committed by the trial court in *Goodman* was far more egregious than the error committed by the trial court in the case at bar. The case at bar is distinguishable from *Goodman*. The instant case is distinguishable because the information elicited about defendant's other act was elicited by the defense from a witness for the People; whereas, in *Goodman* the State elicited the fact that defendant was involved in another crime. The case at bar is also distinguishable from *Goodman* because defendant in the instant case was never arrested or charged for the second attempted sale. See *Goodman*, 109 Ill. App. 3d at 213.

Therefore, the trial court's error was harmless. Evidence of defendant's guilt was overwhelming, and even if the error had not been committed, defendant would not have been entitled to prevail. Furthermore, the evidence admitted did not prove an element of the crime not established by the other properly admitted evidence. Although the trial court could have confined the evidence regarding the second meeting to the issue of defendant's identity, we find that the trial court's failure to do so was not reversible error. Therefore, we cannot disturb the court's finding.

## II

Second, defendant alleges that he was denied the effective assistance of counsel when counsel failed to object to jury instructions concerning the jury's consideration of the uncharged attempted delivery of a controlled substance, or to tender his own appropriate instructions. Defendant maintains that his counsel's deficiency prejudiced his right to a fair trial. Defendant relies upon *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.

The People maintain that defendant received effective assistance of counsel because the totality of counsel's performance at trial was reasonable and within the range of competence demanded in a criminal case. We find that defendant received effective assistance of counsel at trial.

■■ The United States Supreme Court and the Illinois Supreme Court have established general standards for determining whether a defendant received effective assistance of counsel at trial. The United States Supreme Court has held that in order for a defendant to prove that he has received assistance so ineffective as to require reversal of a conviction, defendant must prove (1) that his counsel made errors so serious, and his performance was so deficient, that he was not functioning in a manner commensurate with the standard established by the sixth amendment, and (2) that these deficiencies so prejudiced

defendant as to deprive him of a fair trial with a reliable result. (*Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.) The proper standard for attorney performance is that of reasonably effective assistance pursuant to prevailing professional norms. (*Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65.) "[A] guilty plea cannot be attacked as based on inadequate legal advice unless counsel was not 'a reasonably competent attorney' and the advice was not 'within the range of competence demanded of attorneys in criminal cases.' " (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) In order to establish a deficiency, defendant must overcome the strong presumption that the challenged action, or lack of action, might be the result of "sound trial strategy." (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.) Even assuming a deficiency, a defendant must still demonstrate prejudice. A defendant who demonstrates that his counsel's trial performance fell below prevailing professional norms must also show that there is a "reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69.

In the instant case, defense counsel's performance fell well within the range of competence required for attorneys in criminal cases. Defense counsel actively participated in the jury selection process and filed his answer to discovery. Furthermore, counsel made a motion to exclude witnesses. In addition, the People's witnesses, Officers Hogue, Guerra, and Larsen, were all cross-examined by the defense attorney. Defense counsel also made timely objections, participated in a sidebar conference concerning the admissibility of testimony, and made a motion and argued for a directed verdict. In addition, defense counsel made a motion for, and argued for, a new trial. Finally, during the sentencing hearing, defense counsel argued in mitigation that defendant had been in the United States for 10 years, that he had never been arrested, and that he had a wife and two children.

We also find that defendant failed to demonstrate prejudice. Defendant has failed to show that the fact finder would have had a reasonable doubt respecting guilt. The jury would have found defendant guilty beyond a reasonable doubt because of the facts of the instant case. The police, who were eyewitnesses to the crime, identified defendant, there was unrefuted evidence offered by a chemist that the substance purchased by the police was cocaine, and, finally, the par-

ties stipulated that the powder which Officer Hogue purchased from defendant was the same powder tested by the chemist.

The Illinois Supreme Court has stated that effective assistance of counsel refers to competent, not perfect, representation and that mistakes in trial strategy, or tactics, or in judgment, do not of themselves render representation incompetent. (*Feople v. Stewart* (1984), 104 Ill. 2d 463, 491-92.) The actions of the trial attorney could be considered trial strategy. A reading of the record shows that the strategy of the attorney was to discredit the police officers by showing inconsistencies between the official reports and the actual physical characteristics of defendant. Counsel further sought to discredit the police officers in this case by establishing that they failed to document the third meeting in any of their reports. For the aforementioned reasons, we find that defendant received effective assistance of counsel.

### III

Third, defendant alleges that he was denied a fair trial when, in the closing argument, the State shifted the burden of proof, misstated the evidence, and articulated its personal opinion with respect to the police officer witnesses in order to bolster their credibility. Defendant maintains that the People shifted the burden of proof to defendant when the prosecutor made the following statement:

> "[I]f you believe counsel, you are telling the police officers they are lying, ***. *** [W]hen [Officer Hogue] said that on the stand that's the man who sold the cocaine to me, he lied. And I don't believe that Hogue would do that." (Defense objection sustained.)

Defendant asserts that the trial court's admission of this statement constituted plain error.

The People allege, pursuant to *People v. Enoch* (1988), 122 Ill. 2d 176, defendant waived any objection regarding the first two remarks by failing to raise them in his post-trial motion. Defendant counterargues that the People's waiver argument is inconsistent with the purpose of the waiver rule and is misplaced in the present case. Defendant relies upon *People v. Amos* (1985), 140 Ill. App. 3d 14.

The People maintain in the alternative that defendant's contention is unfounded, that defendant received a fair trial based upon the overwhelming nature of the evidence. The People argue that this may be demonstrated by a proper reading of the full statement in the record. The People correctly assert that defendant's version of the statement is incomplete, and that the full statement in the record correctly reads as follows:

"These police officers are doing a job. You basically have two things, police officers either did poor paperwork, and that is what they did, or, if you believe counsel, you are telling the police officers you are lying, because they either sold it to a man five foot seven, 155 as listed in the arrest report, because if this man they sold it to was six feet, 185 when he said that on the stand that's the man who sold the cocaine to me, he lied. And I don't believe that Hogue would do that." (Defendant's objection was sustained.)

 We find that defendant waived any objection regarding the first two remarks by failing to raise them in his post-trial motion. Defendant waives appellate review of an issue if he fails to make an objection at trial and submit a written post-trial motion raising the issue of an alleged error. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) "Failure to specify grounds for a new trial in writing in a motion for a new trial has been held *** to constitute waiver of the issue on the review in the absence of plain error." (*Enoch*, 122 Ill. 2d at 187.) In the instant case, defendant failed to mention these remarks in his post-trial motion. Furthermore, the People's remarks did not constitute plain error because the statements were not so prejudicial as to affect defendant's substantive rights. Accordingly, defendant has waived review of these remarks by this court.

 Second, we find that the prosecutor committed harmless error when he asserted his personal opinion with respect to the credibility of Officer Hogue. As a general rule, a prosecutor may not personally vouch for the credibility of a witness. (*People v. Martin* (1975), 29 Ill. App. 3d 825.) However, improper prosecutorial arguments "generally do not constitute reversible error unless they result in substantial prejudice to the accused." *People v. Baptist* (1979), 76 Ill. 2d 19, 29.

In a similar case, the Illinois Supreme Court considered all of the evidence at trial and the court's instruction to the jury after defendant's objection was sustained. The court also considered whether "the verdict in the action would have been different absent this single isolated remark." (*People v. Shum* (1987), 117 Ill. 2d 317, 347.) The court concluded that the verdict would not have been different absent the prosecutorial arguments and that the prosecutorial arguments did not constitute reversible error.

 Similarly, in the case at bar, the court sustained defendant's objection and properly instructed the jury. Furthermore, in view of the nature of the evidence in this case, as to the guilt of defendant, it is clear that the verdict in this case would not have been different

even absent this single isolated remark. The argument did not result in substantial prejudice to the accused in this case. Therefore, the prosecutor's remarks constituted harmless error.

■ Finally, defendant alleges that he was denied a fair trial because the prosecutor misstated the evidence in his closing argument. In general, the prosecutor is allowed great latitude in his closing argument. (See *People v. Dominique* (1980), 86 Ill. App. 3d 794.) Although a prosecutor's comments may exceed the bounds of proper comment, the verdict may not be disturbed unless the remarks resulted in substantial prejudice to the accused. (*People v. Baptist* (1979), 76 Ill. 2d 19, 28-29.) Statements based upon facts and circumstances proved, or upon legitimate inferences therefrom, do not exceed proper debate. (*People v. Palmer* (1970), 47 Ill. 2d 289, 298.) If based upon the evidence, a prosecutor may properly comment upon the credibility of the witnesses. *People v. Braxton* (1980), 81 Ill. App. 3d 808, 818.

■ We find that the comments made by the prosecutor in the case at bar were based upon the evidence. There was a discrepancy between Officer Hogue's paperwork and his testimony. Furthermore, defendant has failed to prove that he was substantially prejudiced by the prosecutor's remarks. Therefore, we will not disturb the trial court's verdict.

For the aforementioned reasons, we rule that defendant was not denied a fair trial because the prosecutor's remarks constituted harmless error, and the prosecutor did not misstate the evidence. Accordingly, we will not disturb the trial court's ruling.

### IV

■ Fourth, defendant contends that the court committed plain error when it instructed the jury that the People's exhibit number 2 was a controlled substance when the identity of the substance delivered was to be determined by the jury. Defendant relies upon *People v. Santucci* (1962), 24 Ill. 2d 93. The People contend that this did not constitute error because the remarks were neither harmful nor prejudicial to defendant. We find that the judge's comments constituted harmless error.

In *People v. Santucci* (1962), 24 Ill. 2d 93, the Illinois Supreme Court stated that the "[u]ltimate decisions of fact must fairly be left to the jury[,] *** it is not the province of the judge, in a criminal case, to convey his opinions on such matters to the jurors by word or deed." (*Santucci*, 24 Ill. 2d at 98.) The jury in the instant case was properly instructed that "[a] person who [*sic*] commits the offense of

delivery of a controlled substance when he knowingly delivers a controlled substance." One element of this offense is that the substance delivered must be a controlled substance. Whether the substance delivered was a controlled substance was an ultimate decision of fact for the jury to determine. We find that the trial judge's statement constituted error.

In order "[f]or comments by a trial judge to constitute reversible error, the defendant must show that the remarks were prejudicial and that he or she was harmed by the comments." (*People v. Heidorn* (1983), 114 Ill. App. 3d 933, 937.) "The verdict will not be disturbed unless the judge's remarks constituted a material factor in the conviction[,] or unless prejudice to the defendant appears to be their probable result." *Heidorn*, 114 Ill. App. 3d at 937.

 In the instant case, we find that the judge's remarks did not constitute a material factor in the conviction or bring prejudice or harm to defendant. The record shows that Officer Hogue purchased a substance from defendant, and tests showed that the substance contained cocaine. Furthermore, the parties stipulated that the substance tested by Mr. Larsen, the chemist, was the same substance that Officer Hogue purchased from defendant. In light of this evidence, defendant would have not been entitled to prevail had the judge not erred. Therefore, the trial judge's statement constituted harmless error.

## V

Finally, defendant contends that the trial court abused its discretion by sentencing defendant to six years' imprisonment. The People maintain that defendant's sentence was proper because it was within the statutory limits and that sentencing is within the discretion of the trial judge. We find that the sentence was proper.

 The trial judge's decision with respect to sentencing is entitled to great deference and weight and will not be disturbed on appeal absent an abuse of discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154.) The Illinois Unified Code of Corrections provides that a defendant found guilty of the Class 2 felony of the delivery of a controlled substance may be sentenced to a three- to seven-year term of incarceration. Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1.

The Unified Code of Corrections also lists several factors which the trial court must consider in aggravation and mitigation with respect to minimizing or imposing a more severe sentence of imprisonment. Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.1, 1005—5—3.2.

Although a sentencing court must consider factors in mitigation, it is proper for a sentencing court to sentence a defendant with no criminal record to a substantial term of imprisonment for supplying cocaine. *People v. Bergman* (1984), 121 Ill. App. 3d 100; *People v. Atencia* (1983), 113 Ill. App. 3d 247.

In making a sentence determination, section 11 of article I of the 1970 Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense *and with the objective of restoring the offender to useful citizenship*." (Emphasis in original.) (*People v. Waud* (1977), 69 Ill. 2d 588, 596.) However, the objective of restoring the offender to useful citizenship shall not be given greater consideration than the seriousness of the offense. *Waud*, 69 Ill. 2d at 596.

▪ In the case at bar, the sentencing judge considered all of the appropriate factors in determining defendant's sentence. The judge stated:

"[H]aving considered the facts that I heard during the trial of this case which was before a jury, having considered all [of] the information contained in this pre-sentence investigation, also concerning the arguments both in aggravation and mitigation I have heard in this court, *** I will impose a sentence that I feel is appropriate in this particular case.

In taking those into consideration, I do not believe that the maximum sentence [for] incarceration *** is appropriate in this case.

But I do believe that a period of incarceration is necessary. It's necessary to deter this individual from this type of act in our society. The sale, delivery of controlled substances.

It is necessary to deter other individuals ***.

I believe that this individual, because of the crime he committed[,] *** is making money from society's weaknesses. And that must be punished.

Accordingly, I will impose a sentence I feel is appropriate *** [and] the sentence will be one of 6 years ***.

Even though the Defendant has no prior convictions, this defendant has come to this country, taken advantage of the benefits of this country, but yet he has committed a serious crime ***."

The record reflects that the sentencing judge reached his decision after a great deal of careful thought and deliberation. It is not the function of a reviewing court to serve as a sentencing court. We may not substitute our judgment for that of the trial court merely because

we might have imposed a different sentence had the function to sentence defendant been delegated to us. (*People v. Waud* (1977), 69 Ill. 2d 588, 596.) The judge properly considered factors in aggravation and mitigation and the seriousness of the offense. Furthermore, the sentence of six years is permitted by the statute. Accordingly, we find that defendant has failed to show the trial court abused its discretion by sentencing him to a term of six years in the Illinois Department of Corrections.

For the aforementioned reasons, we affirm defendant's conviction. As a part of our judgment, we grant the People's request for costs of $50 for defending this appeal pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166. In addition, we grant the People's request for $25 for the oral argument pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275.

Affirmed.

LINN and McMORROW, JJ., concur.