THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CRESENCIO ROMAN, Defendant-Appellant.

First District (3rd Division) No. 1—91—1335

Opinion filed October 21, 1992.

Anthony Pinelli, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Barbara Jones, and Carolyn A. Reynolds, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a jury trial, defendant, Cresencio Roman, was found guilty of aggravated criminal sexual assault. (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1).) Defendant was sentenced to a term of 15 years' imprisonment in the Illinois Department of Corrections.

The issues before this court for review are (1) whether the introduction of certain hearsay testimony denied defendant a fair trial pursuant to sections 115—10(b)(2), (c) and (d) of the Code of Criminal Procedure (Ill. Rev. Stat. 1989, ch. 38, pars. 115—10(b)(2), (c), (d)); (2) whether the use of anatomically correct dolls by the complainant to illustrate her testimony denied defendant a fair trial; (3) whether defendant was proved guilty of aggravated criminal sexual assault beyond a reasonable doubt; and (4) whether the trial court abused its discretion when it sentenced defendant to 15 years' imprisonment in the Illinois Department of Corrections. We affirm.

Defendant was charged with aggravated criminal sexual assault in November 1989. In September and October of 1989, the complainant, M.A., was seven years old. At that time, M.A. lived in a one-bedroom apartment with her mother, M.R., her brothers A.A. and S.A., and defendant, her stepfather. M.A. slept on the top bunk of a bunk bed, and her two brothers slept on the bottom bunk. M.R. and defendant slept together in the living room on a mattress removed from a sofa bed.

At defendant's trial, the State presented the testimony of M.A., M.R., A.A. and Dr. Erik Benink. M.R. testified that on October 28, 1989, she had a conversation with one of her co-workers at a Taco Bell restaurant. M.R. told the court that as a result of this conversation, she went home and asked her daughter, M.A., if anyone had ever "touched" her. M.R. testified that M.A. did not answer but lowered her head. M.R. stated that she then asked M.A. if defendant had touched her and that M.A. replied "yes." M.R. further testified that she asked M.A. where defendant had touched her and M.A. pointed to her vagina.

M.R. then took M.A. to the McNeal Clinic. M.A. was examined at the McNeal Clinic and then referred to Christ Hospital, where she was examined by Dr. Erik Benink. The parties stipulated that M.A. stayed overnight at Christ Hospital and that she was not examined by any physician other than Dr. Benink.

Dr. Benink testified that he examined M.A. in the emergency room of Christ Hospital on October 28, 1989, at 7:54 p.m. Dr. Benink told the court that upon performing a genital examination of M.A., he found no evidence of recent trauma, and no lacerations, bruises or scars. Dr. Benink stated, however, that he did find evidence that M.A.'s hymen had been penetrated at one time. Dr. Benink explained that the hymen of a seven-year-old female is presumed virginal and would normally be round and less than five millimeters in diameter. Dr. Benink testified that he measured the diameter of M.A.'s hymen in two places. Dr. Benink stated that M.A.'s hymen measured six millimeters at one diameter and seven millimeters at another diameter. Dr. Benink discovered two healed tears on M.A.'s hymen. Dr. Benink told the court that hymenal tears occur as the result of some type of penetration. Dr. Benink stated that he was not aware of any other way that a seven-year-old female's hymen could be disrupted other than by penetration. Dr. Benink further testified that there could be injury to the hymen and several subsequent penetrations to the same degree, but that any subsequent penetration of the same degree would have little or no noticeable effect upon the hymen because the hymen would "get used to the penetration."

On cross-examination, Dr. Benink testified that he handled two child sexual abuse cases during his three-year residency at Christ Hospital. Dr. Benink stated that he has read textbooks concerning the sexual abuse of children and that he attended lectures on the subject.

M.A. testified that Roman would enter her bedroom early in the morning after her mother left for work, whereupon he would take her into the living room and penetrate her vagina. M.A. used

anatomically correct dolls to illustrate her testimony. Defendant made timely objections to the use of the dolls, but his objections were overruled. The following colloquy occurred at trial:

"[STATE]: Okay. [M.A.], I'm showing you a doll that we have marked as People's Exhibit No. 1 for identification. Can you tell me if it's a girl doll or a boy?

[M.A.]: It's a girl.

[STATE]: You have to talk louder.

[M.A.]: A girl.

[STATE]: What [does] the girl doll have on?

[M.A.]: A dress.

[STATE]: Anything else?

[M.A.]: And her—

[STATE]: Like underpants?

[STATE]: Yes. And let's pretend that this girl doll is you. And that this dress is really your nightgown that you wore. And these would be your underpants, okay?

[M.A.]: Nodding.

[STATE]: Yes? You have to say, yes. Yes or no.

[M.A.]: Yes.

\* \* \*

[STATE]: When [Roman] would bring you into the living room and put you on the mattress, what would he do to you?

[M.A.]: Well, he would sometimes—he would stick his hands \*\*\* Sometimes he would pull his pants down and sometimes he would just put his hand inside me.

[STATE]: Okay. Is there anything on this doll—can you tell the ladies and gentlemen what that is on the doll? We'll take the doll's pants off. What does she have on her body? What would you call it? Okay. Is there a hole or an opening on her body?

[M.A.]: Yes.

[DEFENSE COUNSEL]: Objection. Leading.

[THE COURT]: Overruled.

[STATE]: Okay. Pretending that this doll is you, what would [Roman] do?

[M.A.]: He would sometimes stick his hand inside there.

[STATE]: So you stick your finger inside the hole or opening of the doll?

[M.A.]: Yes.

[STATE]: And would he do that to your body, yes or no?

[M.A.]: Yes.

[STATE]: Okay. What else would he do?

[M.A.]: Sometimes he would just—

[THE COURT]: Speak loudly, [M.A.]

[M.A.]: Sometimes he would just touch me.

[STATE]: Now, I'm going to show you another doll. This doll, [has] been marked People's Exhibit No. 2 for identification. Is this a man doll or a woman doll?

[M.A.]: A man.

[STATE]: Okay. When [Roman] would take you out of your bedroom and bring you to the living room, what would he usually be wearing?

[M.A.]: Sometimes a shirt. Sometimes not one.

[STATE]: Sometimes not one. Anything else would he be wearing?

[M.A.]: Yes. And sometimes shorts.

[STATE]: Underwear shorts or outside shorts?

[STATE]: Shorts. Okay. And when you and [Roman] were in the living room, would he be on the mattress with you?

[M.A.]: Yes.

[STATE]: Okay. And if we could pretend that this boy doll is just wearing a shirt and shorts like [Roman] would be wearing, would you show us what [Roman] would do?

[M.A.]: Sometimes he would take out his—and sometimes he would touch it.

[STATE]: So you are taking the body part of the male part out of the shorts. Do you know what that is called? If you don't know, that's okay. Okay. And would he touch it?

[M.A.]: He would just touch it.

[STATE]: Touching it with the doll's hand?

[M.A.]: Yes.

[STATE]: Okay. And would he do anything else to you [M.A.]?

[M.A.]: No, just—he would just—

[STATE]: What would he do to you?

[M.A.]: He would just touch me down here like this.

[STATE]: Okay. He put his finger inside you?

\* \* \*

[STATE]: Would you make any noise at all?

[M.A.]: Yes. Sometimes scream a little.

[STATE]: Sometimes you screamed a little?

[M.A.]: A little.

[STATE]: Did [Roman] ever say anything about love?

[DEFENSE COUNSEL]: Objection, [j]udge.

[M.A.]: Yes.

[THE COURT]: Overruled.

[THE STATE]: What did he say about love?

[M.A.]: Well sometimes he said to me he wouldn't love me.

[STATE]: He wouldn't what?

[M.A.]: He wouldn't love me anymore.

[STATE]: Anymore?

[M.A.]: Yes.

[STATE]: [M.A.], when did these things happen to you?

[M.A.]: Sometimes when I was—I have to go to school. And sometimes when my mom is not home.

[STATE]: Was your mom ever home when this happened to you?

[M.A.]: Uh-uh.

[STATE]: Yes or no?

[M.A.]: No.

[STATE]: Did it happen mostly on school days?

[M.A.]: Yes.

[STATE]: Did you go to school with your brothers?

[M.A.]: No.

[STATE]: Would you still be in the apartment?

[M.A.]: Yes.

[STATE]: When your brothers went to school?

[M.A.]: Yes.

[STATE]: Okay. Would [Roman] still be with you in the apartment when your brothers went to school?

[M.A.]: Yes."

On cross-examination, M.A. testified that she first saw the anatomically correct dolls on the previous day. She stated that her "lawyers" showed her the dolls and told her that she would have to point to things on the dolls. M.A. maintained that the assistant State's Attorneys did not show her where to touch the dolls or tell her what to say while testifying. M.A. estimated that she had more than 20 encounters with defendant, but she was unable to tell the court the exact number of times defendant penetrated her. M.A. further testified that she has told lies in the past but that she was not lying to the court about what happened between her and Roman.

A.A. testified that in September and October of 1989, he heard and observed his little sister screaming "stop, dad, please stop," while she was under a blanket with defendant in the living room. A.A. testified that this scenario occurred on several occasions. A.A. explained that he went into the living room on one or two occasions when he heard his sister screaming, but that he usually remained in the bedroom while she and defendant were in the living room. A.A. further testified that he believed M.A. was screaming because defendant was "either pinching her or another thing."

After the State rested, defendant testified on his own behalf. Defendant denied that he ever placed his finger in M.A.'s vagina, and he denied that he and M.A. were ever together underneath a blanket. Defendant testified that he sometimes combed M.A.'s hair and that she would scream when he pulled the comb hard upon reaching a knot in her hair. Defendant told the court that his wife was very

protective of her children and that she told them to let her know if anyone ever touched them. The defense rested.

After hearing closing arguments and jury instructions, the jury found defendant guilty of aggravated criminal sexual assault. At the sentencing hearing, defense counsel argued in mitigation that defendant was a gainfully employed college student with no criminal record. The defense also offered several letters written on defendant's behalf asking the trial court for leniency in sentencing. The trial judge made the following statement upon sentencing defendant:

"Well, we have 25, 30 letters here; family, friends, churches that say what a wonderful person you are. Nevertheless *** sometimes you are a wonderful person to people on the outside, people act like wonderful people. But you violated an 8 year old baby. A baby.

We have a lot of that in this society. And I hear a lot of it. And I have—well, she is nine years old now. She was eight years old.

And I have four daughters and two sons. And I can't just ignore all of that and ignore all the testimony and the fact that the spread of six to thirty years in the penitentiary, I should give minimum time. Minimum time would penalize you, but how would it make the family feel?

How would it make the little baby feel that you violated? The baby for the rest of her life is going to be thinking about what her stepfather did to her; a person of authority, a person she loved, a person she confided in. We don't need people like you in this society of ours. We don't need you here. And I don't need you around me.

And some people say I am a little harsh in my sentencing. The jury gave you a fair trial. They found you guilty and now I am going to impose a sentence on you. It is not six years, believe me.

Well, I was going to give you 15 because that's the way I feel."
The trial court sentenced defendant to a term of 15 years in the Illinois Department of Corrections. Defendant now appeals.

First, defendant maintains that the introduction of M.R.'s testimony concerning the conversation between her and M.A. denied him a fair trial pursuant to sections 115—10(b)(2), (c) and (d) of the Code of Criminal Procedure. (Ill. Rev. Stat. 1989, ch. 38, pars. 115—10(b)(2), (c), (d).) The State contends that defendant has waived his right to appellate review of the admission of the testimony in question by sporadically objecting at trial and by failing to preserve this issue by including it in his post-trial motion. In the alternative, if we find that defendant has not waived his right to appellate review of this issue, the State argues that the testimony of M.R. regarding her conversation with M.A. was proper and admissible because it was not

offered for the truth of the matter asserted. The State maintains that if any error was committed, it was harmless in light of the overwhelming evidence of defendant's guilt.

Section 115—10 provides:

"115—10. Sexual acts on child under 13—Hearsay exception

\*\*\* (a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out of court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

(c) If a statement is admitted pursuant to this Section, the court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor.

(d) The proponent of the statement shall give the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement." Ill. Rev. Stat. 1989, ch. 38, par. 115—10.

■ We find that defendant waived his right to judicial review of this issue. In the present case, defendant objected to the admission of the testimony in question upon more than one occasion. Defendant, however, failed to cite section 115—10 as the basis for his objections, and he neglected to mention said objections in his post-trial motion.

A defendant preserves his right to appeal a trial court's action or ruling upon a matter by objecting to the alleged impropriety in a timely manner and by mentioning the specific objection in a post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186-88, 522 N.E.2d 1124, 1129-32.) "*Both* a trial objection *and* a written post-trial

motion raising the issue are required for alleged errors that could have been raised during trial." (Emphasis in original.) (*Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130.) Illinois Supreme Court Rule 615(a), however, provides as follows: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (134 Ill. 2d R. 615(a).) "[P]lain error encompasses those errors which are obvious, which affect the substantial rights of the accused, and which if uncorrected, would be an affront to the integrity and reputation of judicial proceedings." *People v. Stuckey* (1992), 231 Ill. App. 3d 550, 568, 596 N.E.2d 646, 658-59. See also *People v. Young* (1989), 128 Ill. 2d 1, 46, 538 N.E.2d 461, 471; *People v. Bass* (1991), 220 Ill. App. 3d 230, 239, 580 N.E.2d 1274, 1280.

In the present case, there is no evidence that the trial court committed plain error. Section 115—10(c) of the Code of Criminal Procedure governs jury instructions pertaining to the weight and credibility which must be accorded testimony of out-of-court statements made by alleged victims of sexual abuse who are under 13 years of age. The text of section 115—10(c), however, applies only "[i]f a statement is admitted pursuant to this Section." (Ill. Rev. Stat. 1987, ch. 38, par. 115—10(c).) When the State offered the testimony in question, defense counsel objected four times. Each time, defense counsel said: "Objection." In all four instances, the court replied: "Overruled." There is no evidence in the record that defendant objected to the admission of the testimony in question pursuant to section 115—10 or that the trial court subsequently admitted the evidence in question pursuant to that section. The record does not reveal the trial court's reason for overruling defendant's objections and admitting the testimony in question. Accordingly, since section 115—10 was not invoked, and there is no evidence that the trial court based its ruling on each objection upon section 115—10, we cannot find that the trial court violated sections 115—10(b)(2) and (c). It is possible that the trial court overruled defendant's objections and admitted the testimony in question on the basis that it was offered to show how M.R. was notified of the assault and not for the truth of the matter asserted.

Since section 115—10 was not invoked by defendant in the present case, and there is no evidence that the trial court admitted the evidence in question on the basis of that section, we cannot find that the State violated section 115—10(d) by failing to give notice to defendant that it intended to introduce the statement in question into the record.

For the above reasons, we conclude that the trial court did not

commit plain error when it admitted M.R.'s testimony concerning her conversation with M.A. No obvious error affecting the substantial rights of the accused was committed. See *People v. Young* (1989), 128 Ill. 2d 1, 46, 538 N.E.2d 461, 471; *People v. Stuckey* (1992), 231 Ill. App. 3d 550, 568, 596 N.E.2d 646, 658-59; *People v. Bass* (1991), 220 Ill. App. 3d 230, 239, 580 N.E.2d 1274, 1280.

Because the trial court did not commit plain error, we must rule that defendant waived his right to appellate review of the propriety of the admission of the testimony in question by failing to mention the issue in his post-trial motion.

Second, defendant contends that the complainant's use of anatomically correct dolls to illustrate her testimony denied him a fair trial. Defendant argues that there is no scientific basis or justification for the use of anatomically correct dolls by child complainants. The State maintains that it was proper for the complainant to use anatomically correct dolls to demonstrate defendant's actions and that the use of the dolls did not prejudice him.

The use of anatomically correct dolls as testimonial aids by young children who are the alleged victims of sexual abuse has been permitted by courts in several States. *Williams v. State* (Miss. 1989), 539 So. 2d 1049, 1050; *In re Jean Marie W.* (R.I. 1989), 559 A.2d 625, 629; *State v. Oslund* (Minn. App. 1991), 469 N.W.2d 489, 494-95; *People v. Gaskins* (1991), 171 A.D.2d 272, 274-75, 575 N.Y.S.2d 564, 565; *State v. Moore* (1991), 103 N.C. App. 87, 94, 404 S.E.2d 695, 699; *Zuniga v. State* (Tex. Crim. App. 1991), 811 S.W.2d 177, 179-80; *In re Welfare of S.E. & D.E.* (1991), 63 Wash. App. 244, 246, 820 P.2d 47, 48; Reyna v. State (Tex. Crim. App. 1990), 797 S.W.2d 189, 193; *People v. Harris* (1989), 187 Ill. App. 3d 832, 838, 543 N.E.2d 859, 862; *People v. McGuire* (1989), 152 A.D.2d 945, 945, 543 N.Y.S.2d 822, 823; *People v. Robertson* (1988), 168 Ill. App. 3d 132, 135-36, 522 N.E.2d 239, 241-42; *People v. Garrison* (1988), 166 Mich. App. 557, 561, 420 N.W.2d 851, 852 (testimony as to a complainant's reaction to an anatomically correct doll may be admissible as a foundation for an expert witness' opinion that the child has been sexually abused even though the use of such dolls does not rise to the level of a scientific test); *People v. Hutson* (1987), 153 Ill. App. 3d 1073, 1076, 506 N.E.2d 779, 782; *People v. Garvie* (1986), 148 Mich. App. 444, 451, 384 N.W.2d 796, 799; *Commonwealth v. Trenholm* (1982), 14 Mass. App. 1038, 1039, 442 N.E.2d 745, 746; *State v. Eggert* (Minn. App. 1984), 358 N.W.2d 156, 161.

Courts have also held that the testimony of witnesses concerning a complainant's use of anatomically correct dolls to demonstrate

sexual abuse during out-of-court interviews is admissible. *In re C.L. & R.P.* (S.D. 1986), 397 N.W.2d 81, 84-85 (testimony concerning the spontaneous reaction of a six-year-old complainant during an out-of-court interview to the maneuvering of anatomically correct dolls to perform sexual acts was not hearsay and was relevant and admissible); *People v. Mitchell* (1991), 215 Ill. App. 3d 849, 855, 576 N.E.2d 78, 82-83 (the testimony of a complainant's mother concerning her daughter's conduct during an out-of-court interview of the complainant by a State prosecutor, in which the complainant used anatomically correct dolls to illustrate the sexual abuse she suffered was admissible); *State v. Phelps* (Mo. Ct. App. 1991), 816 S.W.2d 227, 230 (a juvenile officer's testimony concerning an out-of-court interview with the complainant, in which the complainant used anatomically correct dolls to illustrate the sexual abuse she suffered was admissible); *State v. Brown* (Iowa Ct. App. 1986), 400 N.W.2d 74, 76 (a police officer's testimony regarding the complainant's oral assertions and nonverbal conduct was not hearsay when offered to rebut a charge that the complainant was improperly influenced).

■ Moreover, this court has affirmed convictions for sex offenses against children where child complainants used anatomically correct dolls to assist them with their testimony. (*People v. Harris* (1989), 187 Ill. App. 3d 832, 838, 543 N.E.2d 859, 862 (a seven-year-old victim's testimony established that penetration occurred as she stated that defendant tried to put his finger in her vagina and she depicted defendant's act to the jury by inserting her finger into the vaginal opening of an anatomically correct doll); *People v. Robertson* (1988), 168 Ill. App. 3d 132, 135-36, 522 N.E.2d 239, 241-42 (an eight-year-old victim's testimony that penetration occurred and her subsequent demonstration of defendant's act upon an anatomically correct doll were sufficient evidence that she was penetrated by defendant); *People v. Hutson* (1987), 153 Ill. App. 3d 1073, 1076, 506 N.E.2d 779, 782 (evidence of penetration was sufficient where the 11-year-old victim demonstrated defendant's actions in open court by pointing to the vaginal area on an anatomically correct doll and identifying it as the place where defendant inserted his finger).) On the basis of the above case law, we find that the complainant's use of anatomically correct dolls was proper.

In addition, we note that in the present case, the victim's use of anatomically correct dolls during her testimony did not violate proper discovery procedures. Supreme Court Rule 412 provides that the prosecution shall disclose to defense counsel "any books, papers, documents, photographs or tangible objects which the prosecuting attorney intends to use in the hearing or trial or which were obtained

from or belonged to the accused." (134 Ill. 2d R. 412(a)(v).) Rule 412 was promulgated in order to prevent the accused from being surprised and prejudiced by the State's evidence. (*People v. Stewart* (1980), 84 Ill. App. 3d 855, 860, 406 N.E.2d 53, 57.) In the present case, the dolls were not physical evidence, they were merely used to help an eight-year-old victim testify that she had been sexually assaulted.

Moreover, there is no indication in the record that the complainant's use of the dolls prejudiced defendant. (See also *People v. Foster* (1979), 76 Ill. 2d 365, 383-84, 392 N.E.2d 6, 14 (defendant argued on appeal that the prosecutor's failure to tender a statement made by a witness for the State denied him a fair trial. The appellate court rejected this argument and noted that defense counsel failed to request a continuance or recess when he learned of the testimony. The supreme court affirmed the appellate court's finding and held that the defendant's failure to request a continuance was "persuasive evidence" that the defendant did not suffer any prejudice. Likewise in this case, defense counsel failed to request a continuance or a recess).) Accordingly, we find that complainant's use of anatomically correct dolls during her testimony did not deny defendant a fair trial.

Next, defendant contends that he was not proved guilty of aggravated criminal sexual assault beyond a reasonable doubt on the basis that the record contains no proof of any intrusion by his body into the complainant's body sufficient to be considered legal penetration. Specifically defendant alleges that the testimony of the victim, illustrated by her use of anatomically correct dolls, and Dr. Benink's testimony that a two-millimeter difference in the size of the victim's hymen as compared to what he maintained is the average size of a seven-year-old girl's hymen were not sufficient to substantiate a finding that he was guilty beyond a reasonable doubt. The State maintains that defendant was proven guilty of aggravated criminal sexual assault beyond a reasonable doubt where the testimony and demonstration given by the victim, combined with the medical evidence presented, were sufficient proof that penetration occurred.

The Criminal Code provides that aggravated criminal sexual assault occurs when the accused, who was 17 years of age or older at the time of the alleged offense, committed an act of sexual penetration of a victim who was under 13 years of age at the time the act was committed. Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1).

The Criminal Code further provides:

"§ 12—12. Definitions. For the purposes of Sections 12—13 through 12—18 of this Code, the terms used in these Sections shall have the following meanings ascribed to them:
* * *

(f) 'Sexual penetration' means any contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio or anal penetration. Evidence of the emission of semen is not required to prove sexual penetration." Ill. Rev. Stat. 1989, ch. 38, par. 12—12(f).

The relevant inquiry of an appellate court upon review of the sufficiency of the evidence in a criminal case is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that defendant committed the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Stuckey* (1992), 231 Ill. App. 3d 550, 566, 596 N.E.2d 646, 657; *People v. Trimble* (1991), 220 Ill. App. 3d 338, 350, 580 N.E.2d 1209, 1216; *People v. Schorle* (1991), 206 Ill. App. 3d 748, 759, 565 N.E.2d 84, 91.) A reviewing court may not substitute its own judgment for that of the trier of fact. *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320.

■ After considering the evidence in the light most favorable to the prosecution, we find that the trial court's ruling is neither improbable, unconvincing, inconclusive, nor contrary to human experience. A rational trier of fact could have found defendant guilty of aggravated criminal sexual assault. Defendant's argument that he was not proved guilty beyond a reasonable doubt because the record contains no proof of any intrusion into the body of the complainant sufficient to constitute legal penetration does not pass muster. Any intrusion, *however slight*, of any part of the body of one person into the sex organ of another person constitutes legal penetration. (Ill. Rev. Stat. 1989, ch. 38, par. 12—12(f).) There is evidence in the record that defendant penetrated M.A. The victim's brother testified that he heard his sister scream for defendant to "stop" on several occasions, and that he heard and witnessed his sister scream while she was under a blanket with defendant. The victim herself testified and demonstrated with anatomically correct dolls that defendant inserted his finger into her vagina. In addition, Dr. Benink testified that the complainant's hymen was penetrated because there were two healed tears on her hymen, and the diameter of her hymen was wider than that of a virginal seven-year-old girl. The record supports the jury's finding that defendant penetrated the victim within the meaning of the Criminal Code. Accordingly, we rule that defendant was proved

guilty of aggravated criminal sexual assault beyond a reasonable doubt.

Finally defendant contends that the trial court abused its discretion in sentencing him to 15 years' imprisonment in the Illinois Department of Corrections. Defendant argues that the trial court had no rational basis for the sentence. The State maintains that the 15-year sentence imposed by the trial court was proper because the trial court considered the facts in evidence and the circumstances of the case, as well as the statutory criteria prior to imposing its sentence.

The nature of the crime, the protection of the public, deterrence and punishment may be considered by the court in determining an appropriate sentence. (*People v. Trimble* (1991), 220 Ill. App. 3d 338, 350, 580 N.E.2d 1209, 1220.) "The trial judge's determination of an appropriate sentence must be given great deference and weight, because the trial judge is in the best position to make a sound determination regarding punishment." (*Trimble*, 220 Ill. App. 3d at 355, 580 N.E.2d at 1220. See also *People v. Cabrera* (1987), 116 Ill. 2d 474, 494, 508 N.E.2d 708, 716.) "It is not the function of a reviewing court to serve as a sentencing court." (*People v. Jenkins* (1991), 209 Ill. App. 3d 249, 264-65, 568 N.E.2d 122, 132.) A trial court's sentence will not be disturbed on appeal absent a clear abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884; *Jenkins*, 209 Ill. App. 3d at 263, 568 N.E.2d at 132.

■ Although the trial judge made references to his family and his feelings during the course of the sentencing hearing, the trial court did not abuse its discretion in sentencing defendant. The trial court reviewed the factors in aggravation and mitigation (Ill. Rev. Stat. 1989, ch. 38, pars. 1005—5—3.1, 1005—5—3.2), and properly considered the seriousness of the offense, the protection of the public and the importance of punishment. (See *Cabrera,* 116 Ill. 2d at 494-95, 508 N.E.2d at 716-17; *Trimble*, 220 Ill. App. 3d at 350, 580 N.E.2d at 1220.) Moreover, defendant's sentence was within the statutory parameters of the minimum and maximum sentences allowed for aggravated criminal sexual assault. (Ill. Rev. Stat. 1989, ch. 38, pars. 12—14(d), 1005—8—1(a)(3).) Accordingly, we conclude that the trial court did not abuse its discretion when it sentenced defendant to 15 years in the Illinois Department of Corrections.

For the aforementioned reasons, we affirm the judgment of the circuit court.

Affirmed.

GREIMAN, P.J., and CERDA, J., concur.